**UNITED STATES of America, Plaintiff,**

v.

**Daniel K. CLESS, Margaret J. Cless, Elwood A. Sterner, Marion L. Sterner, C. Hoerner Cassel, Defendants.**

Civ. A. No. 5300.

United States District Court
M. D. Pennsylvania.
April 18, 1957.

Robert J. Hourigan, U. S. Atty., Scranton, Pa., for plaintiff.

Horace E. Smith, George L. Eveler, Jr., York, Pa., for defendants Elwood A. Sterner, Marion L. Sterner, C. Hoerner Cassel.

FOLLMER, District Judge.

In this case the plaintiff, the United States, asks for judgment under a defaulted bond and seeks foreclosure of the real estate covered by the mortgage given as collateral for the bond. The matter is presently before the Court on motion of the plaintiff for judgment on the pleadings in favor of the plaintiff for the reason that the defendants' answer fails to state a valid defense. The essential facts are not in dispute.

On July 27, 1951, C. Hoerner Cassel took a mortgage on the property of Daniel K. Cless and Margaret J. Cless, his wife in the amount of $3,500, said mortgage being entered of record in the Office of the Recorder of Deeds in and for York County, Pennsylvania, on July 27, 1951, in Mortgage Book 15–Z, Page 583. The bond accompanying said mortgage was in the amount of $7,000, and provided a Power of Attorney for the confession of judgment upon default and for the foreclosure and sale of the premises by a writ of fieri facias.

A second mortgage was taken upon the said premises by the United States, acting through the Administrator of the Farmers Home Administration, in the amount of $3,635, said mortgage being dated September 24, 1952, and recorded in the Office of the Recorder of Deeds in and for York County, Pennsylvania, in Mortgage Book 16–U, Page 274, on October 6, 1952.

The tract of land upon which both mortgages were taken is situated in Newberry Township, York County, Pennsylvania, and contains 24 acres 116 perches of land.

The mortgagors defaulted in the payment of the first mortgage, and judgment was confessed against them on the accompanying bond. A writ of Fieri Facias was issued, and on October 2, 1954, the Sheriff's sale was held and C. Hoerner Cassel bid in and purchased the said property for the sum of $410.61, the costs of said sale. At the time of the Sheriff's sale, the balance of unpaid principal of the mortgage was $3,042, plus interest at the rate of 6% from January 27, 1954, in the amount of $129.29. The total amount due C. Hoerner Cassel at the time of foreclosure was $3,171.29.

On November 13, 1954, C. Hoerner Cassel sold the premises under an agreement of sale to Elwood A. Sterner and Miriam L. Sterner, his wife, of Newberry Township, York County, Pennsylvania, for the sum of $4,500. Title to the said premises has not yet passed to Elwood A. Sterner and wife.

The sole question for determination here is whether the lien of the second mortgage held by the United States was divested by the Sheriff's sale on the foreclosure of the first mortgage in the light of the provisions of 28 U.S.C. § 2410. The pertinent portion of the Act in question provides as follows:

"(a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States *may* be named a party in any civil action or suit in any district court, including the District Court for the Territory of Alaska, or in any State court having jurisdiction of the subject matter, to quiet title to or for the foreclosure of a mortgage or other lien upon real or personal property on which the United States has or claims a mortgage or other lien." (Emphasis supplied.)

I have searched diligently, albeit in vain, for some recorded cases dealing with the precise situation posed in this case. Neither counsel for the plaintiff nor counsel for the defendants have furnished me with any. Having in mind the extent to which the Government has gotten into the business of loaning money in the past several decades, it seems strange that apparently at this late date we are in virgin territory.

First of all, the lien of the United States is not a tax lien. It is rather a second mortgage lien predicated on a loan of money to the mortgagors, then owners of the property, by Farmers Home Administration, an agency of the United States. At the time the agency made this loan and entered its mortgage it had notice that its mortgage was second in lien to a first mortgage held by an individual entered over a year prior thereto.

The mortgagors defaulted on their first mortgage. The mortgagee foreclosed and bought in the property at the Sheriff's sale on his bid of the costs of the sale.[1] Had the second mortgagee been an individual there is no question but that the lien of the second mortgagee would have been extinguished by the

[1] The laws of Pennsylvania provide, 21 P.S. § 804, that, "No inquisition shall be necessary in connection with the sale of real estate by the sheriff, upon a writ of fieri facias, issued upon a judgment entered upon a bond or promissory note accompanying a mortgage, secured upon the real estate to be sold; and the sheriff may, after giving notice in the manner now provided by law in cases of sales under writs of venditioni exponas, proceed to sell such real estate upon the said writ of fieri facias without any other writ whatever."

foreclosure on the first mortgage. Is the situation changed because the United States happens to be the second mortgage holder?

■■ The Government leans heavily on 28 U.S.C. § 2410(a), above cited. This statute is not mandatory,—it merely waives sovereign immunity in suits to foreclose mortgages or quiet titles. Haldeman v. United States, D.C.E.D.Mich., 93 F.Supp. 889. In other words, the purpose of this statute in which the United States consents to be named a party in an action which seeks an adjudication touching any mortgage or other lien of the United States is merely to waive sovereign immunity from suit in certain types of cases. Wells v. Long, 9 Cir., 162 F.2d 842.

If the United States is entitled to a priority in this case it must be based on some statutory enactment. " * * * the federal statutes do not attempt to give priority in all cases to liens created under the paramount authority of the United States." United States v. City of New Britain, Conn., 347 U.S. 81, 84, 74 S.Ct. 367, 370, 98 L.Ed. 520.

United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 113, 95 L.Ed. 53, involved an inchoate attachment lien that had not ripened into a judgment at the time the federal tax liens attached. The court noted that "Numerous contingencies might arise that would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded", and that thus the attachment lien was merely a lis pendens notice that a right to perfect a lien exists. The court further stated, "The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question." The liens asserted by the United States in that case stemmed from 53 Stat. 448, 449, 26 U.S.C. §§ 3670, 3671, 3672, now 26 U.S.C. § 6321 et seq. While the act provided that the unpaid tax in question should be a lien in favor of the United States on all property, real and personal, of the defaulting taxpayer, it specifically provided that the lien should not be valid against mortgagees, pledgees, purchasers or judgment creditors until notice thereof has been filed in the office provided by the law of the State for such filing. The court also set forth in Note 3, 340 U.S. at page 49, 71 S.Ct. at page 112, "The Government also disclaims any priority over the mortgages foreclosed in these proceedings."

In the New Britain case, supra, the matter before the court involved the relative priority of statutory federal and municipal liens to the proceeds of a mortgage foreclosure sale of the property to which the liens attached. The statute creating the federal liens there involved, I.R.C. § 3670, withholding and unemployment taxes and insurance contributions, does not in terms confer priority on them. The court stated [347 U.S. 81, 74 S.Ct. 370]:

"When the debtor is insolvent, Congress has expressly given priority to the payment of indebtedness owing the United States, whether secured by liens or otherwise, by § 3466 of the Revised Statutes, 31 U.S.C. (1946 ed.) § 191, 31 U.S.C.A. § 191. In that circumstance, where all the property of the debtor is involved, Congress has protected the federal revenues by imposing an absolute priority. Where the debtor is not insolvent, Congress has failed to expressly provide for federal priority with certain exceptions not relevant here, although the United States is free to pursue the whole of the debtor's property wherever situated. * * * "

In the instant case the record does not establish that the taxpayer was insolvent.

Referring to the statute creating a federal tax lien, Section 3186 of the Revised Statutes, as amended, 26 U.S.C. §§ 1560, 1561, and 1562 (now 26 U.S.C. § 6321 et seq.), the court in MacKenzie v. United States, 9 Cir., 109 F.2d 540, 541, said:

"The federal tax lien is entirely statutory, therefore its scope and

effect are to be determined solely by the statute and the decisions interpreting it. * * * "

The court further stated, at page 542:

"* * * By the 1913 amendment it intended to extend protection, not to all third parties, but to the three classes of third parties designated therein, namely, mortgagees, purchasers and judgment creditors.[2] We conclude that in order to be protected, the claimant must show that he is within one of those three classes."

Under the specific provisions of the statute the tax lien shall not be valid against any of such named parties until notice thereof has been filed as therein provided. However, it has been held that once the lien has been filed in accordance with local State requirements it can only be removed as federal laws permit.[3]

In United States v. City of Greenville, 4 Cir., 118 F.2d 963, 966, in referring to the above statute, the court said:

"Whether the lien provided by the statute is entitled to priority over antecedent liens for taxes duly perfected by states or municipalities, is a question which is not before us and which we need not decide. *It would seem, however, that the lien was intended to attach to the property of the taxpayer subject to existing encumbrances;* and this is borne out by the provision that it shall not be valid as against mortgagees, purchasers or judgment creditors until notice thereof is duly filed as provided by the act. This interpretation places liens of the federal government and liens of the states on an equal basis for the application of the principle first in time, first in right (Rankin v. Scott, 12 Wheat. 177, 179, 6 L.Ed. 592), which is the principle ordinarily applied with respect to priority of liens, and the one applied between a tax lien and other liens

where the tax lien is not made paramount by statute. 61 C.J. p. 934. * * * " (Emphasis supplied.)

In Adler v. Nicholas, 10 Cir., 166 F.2d 674, 678, the court said:

"The reason why a taxpayer may not ordinarily challenge the validity of a tax claim asserted against him by the Government by an action to enjoin its collection is founded upon public policy and the necessity of prompt payment of such taxes in order to enable the Government to properly function. * * * "

United States v. Ryan, D.C.Minn.1954, 124 F.Supp. 1, 10, was a suit by the United States to establish and enforce federal tax liens and claims, for the foreclosure thereof and to obtain a judgment and decree that defendants had purchased at a mortgage foreclosure sale the real estate subject to liens. This case involved title to property registered under the Torrens system of land registration adopted by the State of Minnesota. The notice of the federal tax liens filed by the United States in the office of the Register of Deeds under debtor's name did not contain a description of the property, and were not memorialized on Torrens certificates applicable to the registered land in accordance with the State statute. Accordingly, the lien of the United States was not a perfected lien in accordance with the laws of the State of Minnesota. The court said, inter alia:

"* * * The mortgage contained a power of sale. Under the laws of the State of Minnesota, a mortgage containing a power of sale may be foreclosed by advertisement. There is nothing in the United States Code which precludes a foreclosure by advertisement. 28 U.S.C.A. § 2410 provides that in any action to foreclose a mortgage the United States *may* be joined as a party defendant. But there is nothing in this section, or in any section of the United

---

2. 26 U.S.C. § 6323 covers "any mortgagee, pledgee, purchaser, or judgment creditor."

3. Miners Sav. Bank of Pittston, Pa. v. United States, D.C.M.D.Pa., 110 F.Supp. 563.

States Code, which prohibits a foreclosure under a power of sale or which provides that the United States will not be bound thereby. The Minnesota Federal Savings and Loan Association was entitled to foreclose by advertisement, and the plaintiff, and all other parties interested in the property, is bound by the foreclosure. This exact question was before the Court in the case of Trust Co. of Texas v. United States, D.C., 3 F.Supp. 683, and the Court held that a mortgage foreclosure under power of sale extinguishes not only the rights of the owner in the property sold, but all subsequent and inferior liens thereon, *including the lien of the United States*. Therefore, in the instant case, the foreclosure divested the interest of the registered owner, Kenneth Ryan, and the rights of all parties claiming under or through him, including the plaintiff herein."

No appeal was taken in this case.

Whether the Ryan case and the Miners Savings Bank of Pittston, Pa., case do or do not express conflicting views in relation to tax liens need not concern us here.[4]

■ I find no evidence of a Congressional sensitivity in relation to claims of the Government predicated on loans made to individuals by various governmental agencies comparable to that evidenced in relation to tax claims, and for the very obvious reason that the latter deals, as above indicated, with a matter of public policy,—the collection of taxes to enable the Government to function. Certainly what was said in the Ryan case, supra, is pertinent in connection with the problem presented in this case concerning the lien of the United States under a second mortgage created in the course of an ordinary business transaction of an agency of the United States, as to which there is no federal statutory provision conferring any particular sanctity, and which, therefore, is dependent entirely both as to its position and enforcement upon State laws.

■ No question has been raised by the plaintiff in its complaint as to the correctness of the foreclosure procedure under Pennsylvania law, and it certainly is well established in Pennsylvania that a junior lien held by an individual or a private corporation would be discharged by a foreclosure on a prior first mortgage.[5] In Pennsylvania the lien of a judgment on bond accompanying a mortgage on realty relates back to the date when the mortgage was recorded.[6]

Plaintiff's motion for judgment on the pleadings will be denied.

■ Defendants have not moved for summary judgment. However, in the instant case there is no dispute as to the facts. Consequently, after full argument and on consideration of briefs, I am convinced there is no genuine issue as to any material fact. Had defendants made such a motion it is clear that they would be entitled to summary judgment.[7] Under the circumstances, summary judgment will be entered in favor of the defendants.

---

4. See also Trust Co. of Texas v. United States, D.C.S.D.Tex.1933, 3 F.Supp. 683, 684, in which the court said:
   " * * * The courts of Texas hold that a sale under a power such as this extinguishes not only all the rights of the owner in the property sold, but all subsequent and inferior liens thereon. [Citing cases] To the same effect are the federal cases. [Citing cases] I know of nothing which exempts the United States from the operation of this rule."

5. Bellevue Borough v. Umstead, 38 Pa. Super. 116.

6. In re Schwartz, D.C.W.D.Pa.1931, 52 F. 2d 900; Moore v. Schell, 99 Pa.Super. 81.

7. Moore's Federal Practice, 2d Ed., Vol. 6, Par. 56.12, Page 2088; American Automobile Ins. Co. v. Indemnity Ins. Co. of North America, D.C.E.D.Pa., 108 F. Supp. 221; Smith v. McDonald, D.C. M.D.Pa., 116 F.Supp. 158; United States v. Franklin Federal Savings & Loan Ass'n, D.C.M.D.Pa., 140 F.Supp. 286.