UNITED STATES of America,
Appellant,

v.

Daniel K. CLESS, Margaret J. Cless, El-
wood A. Sterner, Marion L. Sterner,
C. Hoerner Cassel.

No. 12296.

United States Court of Appeals
Third Circuit.

Argued Jan. 7, 1958.

Decided April 11, 1958.

Bernard Cedarbaum, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Robert J. Hourigan, U. S. Atty., Scranton, Pa., Paul A. Sweeney, Atty. Dept. of Justice, Washington, D. C., on the brief), for the United States.

Horace E. Smith, York, Pa. (Horace E. Smith, Thomas H. Reed, York, on the brief), for appellees.

Before MARIS, McLAUGHLIN and STALEY, Circuit Judges.

STALEY, Circuit Judge.

 For well over a century it has been the established rule in Pennsylvania that the foreclosure of a prior mortgage divests all subsequent liens on real estate. It is not necessary to join the subordinate lienors in the action nor to give them actual notice. Whether a second mortgage lien held by the United States may be extinguished upon foreclosure of a prior lien in accordance with this accustomed statutory practice of Pennsylvania is the question presented in this appeal.

Daniel K. Cless and Margaret J. Cless, his wife, were owners of real estate in York County, Pennsylvania. They borrowed $3,500 from C. Hoerner Cassel, giving him a bond secured by a mortgage on the real property. The mortgage was duly recorded in the appropriate local office on July 27, 1951. The bond gave Cassel a power of attorney for confession of judgment in the event of default and provided for foreclosure and sale of the property by the writ of fieri facias.

Subsequent to Cassel's first mortgage, the Farmers Home Administration took a mortgage on the property in question in the amount of $3,635. This second mortgage was recorded by the United States on October 6, 1952, in the same office as the first mortgage.

Cassel, the first mortgagee, confessed judgment on the bond accompanying his mortgage upon default by the mortgagors. In due course, a writ of fieri facias was issued, and at the sheriff's sale on October 2, 1954, Cassel purchased the property for the costs of the sale, a sum of $410.61. It should be noted here that the total unpaid balance of Cassel's mortgage at the date of the sale was $3,-171.29.

Elwood A. Sterner and his wife contracted on November 13, 1954, to purchase the property from Cassel for $4,-500. Legal title has not yet passed to the Sterners.

The action out of which this appeal stems was brought by the United States seeking judgment for the balance under its defaulted bond and seeking foreclosure and sale of the mortgaged property. The government recognized that if it were a private person holding a second mortgage in Pennsylvania, its lien would be divested without actual notice to it. Notice was provided, however, by advertisement and the posting of printed handbills, as provided by statute. 21 Purdon's Pa.Stat.Ann. § 804; 12 Purdon's Pa.Stat.Ann. §§ 2443 and 2444. After the case was at issue, the district court denied the government's motion for judgment on the pleadings and granted judgment for defendants. D.C.M.D.Pa. 1957, 150 F.Supp. 687.

It is essentially the position of the United States that, regardless of the established Pennsylvania rule of divesting subsequent liens without joining the lien holders, the government should be accorded preferential treatment in view of the provisions of 28 U.S.C. § 2410, which reads in relevant part as follows:

"(a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States *may* be named a party in any civil action or suit in any district court, including the District Court for the Territory of Alaska, or in any State court having jurisdiction

of the subject matter, to quiet title to or for the foreclosure of a mortgage or other lien upon real or personal property on which the United States has or claims a mortgage or other lien." [Emphasis supplied.]

▇ The district court concluded that this statute was not intended to require the joinder of the United States, but was merely a waiver of sovereign immunity by a consent to be sued in those situations where the foreclosing creditor might be required to join the government as junior lienor under local law. 150 F.Supp. at page 690. We agree with the view of the district court.

▇ The salient argument of the government on this appeal is that a judicial action affecting a property interest of the United States is an unconsented suit against the sovereign. The fallacy inherent in this contention is that the United States as a second mortgagee was not an indispensable party to the judicial foreclosure of the first mortgage in Pennsylvania. It was not the owner of the fee nor was it in possession, and the purpose of foreclosing the first mortgage was not the divestiture of the government's lien, although the second lien of the United States was incidentally divested. In short, the foreclosure action was against the mortgagor and not against the United States. The government here relies upon United States v. Alabama, 1941, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327 and State of Minnesota v. United States, 1939, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235, as establishing the principle that any proceeding against property in which the United States has an interest is a suit against the United States. We think these cases, however, are narrower in scope than the government urges. In both decisions the United States was an indispensable party to the actions involved there. In United States v. Alabama, the government was the owner of the tract of land which the state attempted to sell to satisfy the lien of a state tax. It was held that while the state liens were valid, the United States was a necessary party to the proceedings for the sale of the land, and since it had not consented to the suit, the state courts were without jurisdiction. 313 U.S. at page 282, 61 S.Ct. at page 1014. State of Minnesota v. United States decided that a state action of condemnation to acquire a right of way over lands held by the United States in fee was an action against the United States. As such, the United States was an indispensable party. 305 U.S. at page 386, 59 S.Ct. at page 294.[1] Plainly, neither of these cases were concerned with the situation involved in the present appeal where the United States is merely a subordinate mortgage lienor, not entitled under local law to demand its joinder in a suit to foreclose the prior mortgage.

We turn now to the inquiry of whether Section 2410 of Title 28 of the United States Code requires the joinder of the government in order to divest its subordinate lien. As remarked above, if the United States were a private person, its lien would clearly be divested by Pennsylvania law. As early as 1823, the Pennsylvania Supreme Court spoke of the principal of divestiture of subordinate liens on the sale on a prior lien as "the long and well established and understood rule." McCall v. Lenox, 9 Serg. & R., Pa., 302, 316. And the Pennsylvania

1. The cases relied on by the Supreme Court in the decisions discussed in the text support the view that if the United States is the owner of the fee, it is therefore an indispensable party to an action affecting its property. In The Siren, 1868, 7 Wall. 152, 157, 19 L.Ed. 129, the Supreme Court remarked:

"So also express contract liens upon the property of the United States are incapable of enforcement. * * * The United States, possessing the fee, would be an indispensable party to any suit to foreclose the equity of redemption, or to obtain a sale of the premises."

See also Carr v. United States, 1878, 98 U.S. 433, 439, 25 L.Ed. 209, where the court, relying on The Siren, said:

"* * * At the same time, it was conceded that neither the government nor its property can be subjected to direct legal proceedings without its consent * * *." [Emphasis supplied.]

statute prescribing notice by advertisement and posting of handbills in the sale of real estate upon execution has been the local law since 1836. 12 Purdon's Pa. Stat.Ann. §§ 2443 and 2444.

■ The United States urges upon this court an interpretation of 28 U.S.C. § 2410 which would overturn the time-honored procedures of mortgage foreclosure in Pennsylvania. We feel certain that Congress did not intend to do this by implication, and clearly the statute does not explicitly provide that the United States must be joined as a subordinate lienor. The interpretation of the statute by the district court as a mere waiver of sovereign immunity by the United States is correct.[2] In states where it is necessary to join the junior lienors, consent for such joinder is given by the statute. See generally, Annotation, 1938, 113 A.L.R. 1511. For example, where a state provides for foreclosure by a bill in equity, the subordinate lienors must be before the court. This, however, is not the procedure in Pennsylvania where foreclosure proceedings are brought on the law side of the court pursuant to statute. We find nothing in the statute giving the United States rights in this matter superior to the rights enjoyed by private citizens. The statute accords to the government no such preference.

We have concluded that the United States is not an indispensable party as a second mortgage lienor under Pennsylvania law. And even if this were an equity proceeding by state law, and the United States, although a necessary party, were not joined, its remedy might not rise higher than the right to redeem after foreclosure. The Supreme Court discussed this situation in Christian v. Atlantic & North Carolina R. R. Co., 1890, 133 U.S. 233, 243–244, 10 S.Ct. 260, 263, 33 L.Ed. 589:

"There is a class of cases, undoubtedly, in which the interests of the state may be indirectly affected by a judicial proceeding without making it a party. Cases of this sort may arise in courts of equity where property is brought under its jurisdiction for foreclosure or some other proceeding, and the state, not having the title in fee or the possession of the property, has some lien upon it, or claim against it, as a judgment against the mortgagor, subsequent to the mortgage. In such a case the foreclosure and sale of the property will not be prevented by the interest which the state has in it, but its right of redemption will remain the same as before."

■ We are of the opinion that the district court properly entered judgment for the defendants by concluding that the subordinate mortgage lien of the United States was divested by foreclosure of the prior mortgage in accordance with Pennsylvania law, unaffected by 28 U.S.C. § 2410.

■ The government makes the subsidiary contention that the Pennsylvania procedure of mortgage foreclosure and lien divestiture as applied here constitutes an unreasonable interference with the function of the United States in securing and collecting its debts. We find this wholly without merit. This contention totally ignores the rights that first mortgagees in Pennsylvania have enjoyed for more than a century, and ignores the impact such a decision might have on

2. The statute reads specifically that "the United States *may* be named a party in any civil action * * * to quiet title to or for the foreclosure of a mortgage or other lien upon real or personal property on which the United States has or claims a mortgage or other lien." [Emphasis supplied.]
That the word "may" simply implies waiver of sovereign immunity is made plain by the parent statute entitled, "An Act To permit the United States to be made a party defendant in certain cases." That act reads:
" * * * the consent of the United States be, and it is hereby given, to be named a party in any suit * * * for the purpose of securing an adjudication touching any mortgage or other lien the United States may have or claim on the premises involved." 46 Stat. 1528 (1931).

the business of lending money. The power of sale given in the mortgage bond might be a meaningless safeguard to a Pennsylvania mortgagee who would be constantly faced with the threat that his mortgagor might borrow additional moneys on the real estate from a federal agency, and thus jeopardize his security.

In the absence of express Congressional action to the contrary, we think it is not asking too much from a federal agency, which has embarked upon the business of lending money in competition with private firms and individuals, simply to be governed by the same local law which controls the rights of private citizens in a similar endeavor. And the government could not have been taken by surprise by local law established for one hundred years and more. In this situation, notice adequate to others is adequate to the United States.

The judgment of the district court will be affirmed.