ESPERANZA RODRÍGUEZ BARREAL WIDOW OF MARI, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, MAYAGÜEZ PART, FRANK VIZCARRONDO VIVAS, JUDGE, Respondent; FARMERS' HOME ADMINISTRATION, Intervener.

No. 2570.    Decided June 6, 1963.

*José Sabater* for petitioner. *Francisco A. Gil, Jr., Federal District Attorney* for the U.S. District Court for Puerto Rico, and *Lemuel Marqués, Jr.,* counsel for the Office of General Attorney of the U.S. Department of Agriculture, for intervener.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

Esperanza Rodríguez Barreal widow of Mari foreclosed a first mortgage which had been constituted in her favor on certain property of Alejandro Rodríguez and his wife, María Rodríguez, to secure a deferred price. At the time of foreclosure the property appeared to have been subsequently encumbered by three crop liens in favor of a federal agency, the Farmers' Home Administration, which was duly notified of the foreclosure proceeding as required by the laws applicable to the case. The junior creditor failed to appear at the auction sale to pay the preferred lien of the foreclosing creditor and to subrogate itself in the rights of such creditor. As to the pending crop at the time of foreclosure, it seems that the crop was harvested by the mortgagor and the proceeds thereof delivered to a dealer with instructions to place them at the disposal of the Farmers' Home Administration, and that this agency ordered the dealer to retain the proceeds of the crop until further notice.

After the property was foreclosed and the last crop collected, in the manner afore-stated, Esperanza Rodríguez Barreal widow of Mari requested the Superior Court of Puerto Rico, Mayagüez Part, to cancel the three crop liens in favor of the Farmers' Home Administration. Thereupon the Administration appeared and objected to the cancellation of its crop liens alleging that, according to the Agricultural Credits Act of Puerto Rico, the crop liens have preference over any mortgage already recorded and that the court lacked jurisdiction to dispose of crop credits of the United States of America without that Government having been duly summoned. According to the record of the hearing, the trial court apparently was agreeable with the first allegation of the Farmers' Home Administration. We issued a writ of certiorari to review the verbal order of respondent judge issued in open court in the Mayagüez Part at a hearing held on September 28, 1959, refusing to order the cancellation of those junior liens.

■ In the petition before this Court the foreclosing creditor, Esperanza Rodríguez Barreal widow of Mari, insists on her right that those junior crop liens be cancelled on the ground that the auction sales of the property did not produce a sufficient amount to pay her mortgage and the junior crop liens, according to the provisions of the Mortgage Law of Puerto Rico, and the Farmers' Home Administration insists on its theory that the crop liens, even if they are subsequent, have priority over any prior mortgages, alleging further that since the action is directed against the United States the trial court had not acquired jurisdiction over that body politic because it was not duly served by serving process upon the district attorney of the District Court of the United States for the District of Puerto Rico and by sending copy of the complaint, by registered mail, to the Attorney General of the United States. The issue has been painstakingly and intelligently argued by the learned attorneys for both parties.

As to the first aspect of the controversy, the applicable law is § 4 of Act No. 37 of March 10, 1910, as amended by Act No. 66 of August 1, 1925—5 L.P.R.A. § 167, p. 31— which provides: "*As regards the products which are the object of the lien,* the crop loan credit, from the date it is filed in the registry hereinafter provided, shall have preference over other subsequent credits of any kind during the years stipulated in the contract, and in all cases, until the creditor is fully reimbursed the amount of his credit, except the tax lien in favor of The People of Porto Rico, as provided by law. Where the creditor has not been fully paid the amount of his credit during the term of the contract, it shall be the duty of such creditor to enter into a contract for the extension of such term with the debtor, or to bring suit as provided in section 9 hereof, within six months after the expiration of the contract. Pursuant to the provisions of section 363 of the Civil Code the purchaser of property at public auction, the crops on which property are encumbered by a crop lien

entered in the Registry of Property or in the special registry provided by this Act, whether such auction is the outcome of an ordinary action or of an action to recover a mortgage credit registered subsequently to the crop loan or prior thereto, but constituted after this Act takes effect, shall choose between allowing the crop creditor, or the first crop creditor where there are several, to harvest and receive such pending crops as are subject to the lien and fully to cultivate and prepare for the harvest, and paying said crop creditor the assessed value of the crop at the time such purchaser takes possession of them, to the amount of the crop lien, though not exceeding the sum stated in the register. In the latter case an assessment shall be made as in the case of an execution of a judgment of unlawful detainer against a defendant claiming improvements, labor and crops. A crop creditor receiving such crops shall render account to the debtor; shall credit the latter with the liquid proceeds obtained, or such part of such liquid proceeds as may be necessary, and shall deliver the remainder, if any, to subsequent crop creditors, to the debtor or to the purchaser, as the case may be and as the court may determine. The court taking cognizance in the proceedings giving origin to the auction sale, shall be competent to take cognizance of said incidental proceedings, as regards the execution of such judgment as may be rendered in said proceedings." (Italics ours.)

Section 363 (Civil Code of 1902, § 290 of the 1930 ed.) to which reference is made in the preceding section provides: "The receiver of fruits is obliged to pay the expenses incurred by a third person in their production, gathering and preservation."

Section 4 is related to § 14 of the same Act which provides, "No title or document which has not been previously recorded in the Registry of Property or in the Registry of Contracts for Agricultural Purposes, shall prevail against a title recorded pursuant to this Act. The provisions of the

Mortgage Law, in so far as not in conflict with the provisions of this Act, shall be applicable to entries and marginal notes made in the 'Registry for Contracts for Agricultural Purposes'; but in no case the former registration of the property in the Registry of Property shall be required for the purpose of making such entries," and to §§ 1823 and 1824 of the Civil Code of Puerto Rico which provide: "With regard to certain real property and rights on realty of the debtor, the following shall have preference: . . . 2. Credits for advances for agricultural purposes, *as to the crops on the property* for which such advances are made, *as provided in the special act relative* to that subject; . . . 4. Mortgage and agricultural credits (*refaccionarios*) entered and recorded in the registry of property, with regard to the property mortgaged, or which had been the object of the agricultural loan (*refacción*)." (Italics ours.)

The key phrase of § 4, extracted in its pertinent part, would be the following: The purchaser of property at public auction the crops of which are encumbered by a crop lien, whether such auction is the outcome of an ordinary action or of an action to recover a mortgage credit registered *subsequently* to the crop loan or *prior* thereto, shall choose between allowing the crop creditor to harvest and receive *the pending crops* or paying said crop creditor the assessed value of the crop at the time *of taking possession of them*, and in the latter case an assessment shall be made as in the case of an execution of a judgment of unlawful detainer against a defendant claiming improvements, labor, and crops.

■ As may be seen, the intention of the lawmaker was to protect the lien on the *pending crops* at the time of foreclosure and not the future crops after the foreclosure. The reason for creating this preference is obvious: According to Art. 110 of the Mortgage Law, "A mortgage extends to natural accessions, improvements, *pending fruits* and rents not collected at the time of the maturity of the obligation,"

and according to Art. 111 of the same Law ". . . the following shall be considered to have been mortgaged jointly with the estate, even though not mentioned in the contract: . . . 3. The products, which at the time the mortgage obligation matures *may be growing* upon the trees or plants or which have already been harvested, but not yet removed or stored." The preference also covers the *pending fruits*, since it is subordinated to the provisions of the special crop loan Act.

The intention of the Puerto Rico Agricultural Credits Act, as respects a previously recorded mortgage, is to neutralize the right of the mortgagee to take for himself the pending fruits at the time of foreclosure, since the money of the crop creditor is what has helped to produce the pending fruits. The reference to the execution of the judgment of unlawful detainer further emphasizes the legislative intention. In the case of lease, the lessee's money is what has helped to produce such fruits.

■ It is clear that if the foreclosure produces more than the amount of the mortgage, the remainder is applied to the crop lien; and in the event both the mortgagee and the crop creditor are fully paid their respective credits, the balance produced by the foreclosure shall be delivered to the mortgagor.

■ The additional security of the crop creditor as respects a previous mortgage lien consists in his right, as junior creditor, in a strict mortgage sense, to appearing at the auction sale for the purpose of paying the mortgage credit and any other credits having preference over his, and to purchase the property. But other than this, his security is limited to the pending fruits at the time of foreclosure.

As to the second aspect of the controversy, the applicable law is § 2410 of Public Law No. 773 of June 25, 1948, to revise, codify and enact into law Title 28 of the United States

Code, entitled Judicial Code and Judiciary—62 Stat. 972–73, as amended, 28 U.S.C.A. 189–90, Supp. 1963, p. 91—which as to actions affecting property on which the United States has a lien provides: (a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, (including the District Court for the Territory of Alaska) [eliminated by 1958 amendment] or in any State court having jurisdiction of the subject matter, to quiet title to or for the foreclosure of a mortgage or other lien upon real or personal property on which the United States has or claims a mortgage or other lien.

(b) The complaint shall set forth with particularity the nature of the interest or lien of the United States. In actions in the State courts service upon the United States shall be made by serving the process of the court with a copy of the complaint upon the United States attorney for the district in which the action is brought or upon an assistant United States attorney or clerical employee designated by the United States attorney in writing filed with the clerk of the court in which the action is brought and by sending copies of the process and complaint, by registered mail, (or "by certified mail") [added by 1960 amendment] to the Attorney General of the United States at Washington, District of Columbia. In such actions the United States may appear and answer, plead or demur within sixty days after such service or such further time as the court may allow.

(c) A judicial sale in such action or suit shall have the same effect respecting the discharge of the property from liens and encumbrances held by the United States as may be provided with respect to such matters by the local law of the place where the property is situated. A sale to satisfy a lien inferior to one of the United States, shall be made subject to and without disturbing the lien of the United

States, unless the United States consents that the property may be sold free of its lien and the proceeds divided as the parties may be entitled. Where a sale of real estate is made to satisfy a lien prior to that of the United States, the United States shall have one year from the date of sale within which to redeem. In any case where the debt owing the United States is due, the United States may ask, by way of affirmative relief, for the foreclosure of its own lien and where property is sold to satisfy a first lien held by the United States, the United States may bid at the sale such sum, not exceeding the amount of its claim with expenses of sale, as may be directed by the head of the department or agency of the United States which has charge of the administration of the laws in respect of which the claim of the United States arises.

(d) Whenever any person has a lien upon any real or personal property, duly recorded in the jurisdiction in which the property is located, and a junior lien, other than a tax lien, in favor of the United States attaches to such property, such person may make a written request to the officer charged with the administration of the laws in respect of which the lien of the United States arises, to have the same extinguished. If after appropriate investigation, it appears to such officer that the proceeds from the sale of the property would be insufficient to wholly or partly satisfy the lien of the United States, or that the claim of the United States has been satisfied or by lapse of time or otherwise has become unenforceable, such officer shall so report to the Comptroller General who may issue a certificate releasing the property from such lien.

■ Since subd. (c) provides that the discharge of the liens and encumbrances held by the United States shall be governed by what may be provided with respect to such matters by the local law of the place where the property is situated, it is well to state briefly the mortgage foreclosure

proceeding provided by our local law. The most summary foreclosure provided by our Act commences with a writing filed in the competent court together with a certificate from the Registrar of Property stating the other liens and encumbrances on the mortgaged property. If there are preferred or senior liens prior to the mortgage sought to be foreclosed, the purchaser, highest bidder or adjudicataire at the auction sale shall assume and answer for them, since the foreclosure of a junior lien does not discharge the property from prior liens, as is the case in some states of the United States. If there are junior liens, the foreclosure of the senior lien discharges the property from the junior liens; however, any excess produced by the auction sale over the lien foreclosed is applied to pay the junior liens.

As to the notice of the proceeding, as soon as the initial writing is filed the court issues an order to the mortgagor demanding payment of the mortgage, interest due thereon and an additional credit for costs and attorney's fees within a term of 30 days. The demand for payment shall be served personally on the junior creditors in order to give them an opportunity to pay the preferred lien sought to be foreclosed and subrogate themselves in the rights of the senior creditor. If the mortgagor, or in his default the junior creditors, fails to pay the mortgage sought to be foreclosed, the court directs that the mortgaged property be sold at public auction and the publication of the corresponding edicts for a period of not less than 20 days. As a general rule, this second step takes about 30 days in addition to the first term of 30 days granted to the mortgagor or to the junior creditors to satisfy the mortgage before it is sold at public auction. The less summary foreclosure is an ordinary action, but in such action, which is also limited to the mortgaged property and in which the notice requirements are identical, the picture of preferences and the rights of junior creditors to

subrogate themselves by the payment of the mortgage does not change.

■■ As may be seen, our mortgage foreclosure proceeding gives a reasonable opportunity to a junior creditor to assert his rights provided he is willing to pay the senior lien. As to § 2410—applicable to Alaska and Puerto Rico, according to the legislative history—the American decisions have established that the rights of the United States of America as junior creditor are the same as those which junior creditors would have under the different state legislations. Moreover, the kind of notice which must be given in order to dispose of these junior liens is the same notice provided by the state legislation and not by § 2410. *United States* v. *Brosnan*, 363 U.S. 237, 241–50; 4 L.Ed. 2d 1192, 1196–201 (Harlan) (1960); *United States* v. *Cless*, 254 F.2d 590, 592–94 (Staley) (1958).

■ In terms of strict justice, the most that the Farmers' Home Administration could have obtained, under the terms of its crop credit, would have been what it did obtain within the procedure followed: the payment of the pending fruits at the time of foreclosing the property, independently of the notice procedure used. Whenever the crop credit covers other years in addition to that of the pending crop at the time of foreclosure, the only remedy is to pay the amount of the mortgage sought to be foreclosed prior to such credits and to convert those subsequent crop credits into real mortgage credits prior to any other lien. Articles 59–64 of the Mortgage Law.

The preference accorded to senior credits, according to state legislation, is clearly stated by the American case law. The intention of Congress was not to substitute by a federal plan the system of investment of the private economy of the different states, but to provide other credit sources within a rehabilitation plan capable of taking care of a greater

margin of risk than that which the private economy could assume.

The order of September 28, 1959 of the Superior Court of Puerto Rico, Mayagüez Part, will be set aside and the cancellation of the junior liens sought by petitioner is ordered.