**MISSOURI PACIFIC RAILROAD COMPANY, Appellant,**

v.

**NATIONAL MILLING COMPANY, Inc.**

**No. 17134.**

United States Court of Appeals
Third Circuit.

Argued Oct. 11, 1968.

Decided April 3, 1969.

Rehearing Denied May 9, 1969.

John P. Mason, Dechert, Price & Rhoads, Philadelphia, Pa. (Mark M. Hennelly and R. W. Yost, St. Louis, Mo., on the brief), for appellant.

Edwin P. Rome, Blank, Rudenko, Klaus & Rome, Philadelphia, Pa. (Samuel Kalikman, Leonard Dubin, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, STALEY and VAN DUSEN, Circuit Judges.

OPINION OF THE COURT

PER CURIAM.

Appellee, a New Jersey corporation, purchased four carloads of hardwood flooring from an Arkansas consignor to be delivered to it in New Jersey. The plaintiff carrier specifically assumes in this court that it acknowledged on the straight bill of lading for the flooring

that the full amount of freight charges had been paid by the shipper when in fact the shipper had not paid said charges. Appellant further assumes that relying on that notation appellee paid the freight charges. Even so says the plaintiff appellant carrier "Under the law, the consignee is still liable to the carrier for the freight charges." On that theory it brought this suit for said freight charges.

The entire asserted foundation of the action is the Interstate Commerce Act, 49 U.S.C.A. § 6(7) which provides that a carrier charging in accordance with tariffs filed and in effect, cannot charge greater or less and cannot refund or remit any portion of said charges. Great stress is also laid on a 1927 amendment to the Act (Section 3(2)) which states "No carrier by railroad * * * shall deliver or relinquish possession at destination of any freight or express shipment transported by it until all tariff rates and charges have been paid, except under such rules and regulations as the Commission may from time to time prescribe to govern the settlement of all such rates and charges and to prevent unjust discrimination * * *." Appellant also cites Section 7 of the Uniform Bill of Lading which states "The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property; * * *."

Appellant follows with the statement "A private consignee's established liability may not be overcome by equitable considerations." For this the landmark decision of Pittsburgh C. C. & St. L. Railway Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151 (1919) is presented. That case is of no help whatsoever as to our problem. There the carrier asked for and received a freight charge of $15. The correct charge was $30 and the carrier later sought to collect the $15 balance. The Court held that the carrier could not be estopped from collecting the legal rate. The undisputed situation before us is that, because of the carrier's express statement on the bill of lading that the freight had been prepaid, appel-

lee in paying for the merchandise, reimbursed as it thought, the consignor for the amount of the freight charge which the carrier by its statement had notified the consignee and all concerned that consignor had paid. The other opinion heavily relied upon by appellant is United States v. Western Pacific R.R., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). This is stated to be exactly like Fink except that the consignee was the Government. The holding is that the Government under certain conditions was not estopped from showing that the shipment involved should have been carried at a lower rate. Again there is no quarrel with the law outlined but it has no relevance to this appeal.

Appellant therefore concludes that the Act in the instant situation will be complied with only when the consignee pays the carrier. It quarrels with the holding of the District Court that appellee "has discharged in full measure its obligations to pay its debt as required by law." Appellant says "However, the consignee had two legal obligations, one to the shipper under its contract with him, and the other to the carrier by operation of law upon acceptance of the shipment." What the carrier really did was to deliberately and affirmatively mark the shipment prepaid on the bill of lading. By so doing it in effect directed the consignee to reimburse the shipper for the freight the latter had prepaid. As a result, the consignee in paying its bill to the consignor included the freight charges solely because the carrier had formally notified it that these had been prepaid by the consignor. There is no contention by appellant that appellee could at this time obtain reimbursement of the freight charges from consignor company which is apparently insolvent.

The litigation was before the district court initially on the carrier's motion for judgment on the pleadings. From the record the carrier's only reason for bringing the suit was that the railroad had been unable to collect the freight charges from the shipper who was, according to plaintiff, in financial diffi-

culty. Plaintiff's motion was supported by an affidavit from one of its regional managers who did not mention a word about his railroad having marked the shipment prepaid. Defendant filed a counter affidavit stating it had paid the freight bill and asking for permission to add the affirmative defense of estoppel to its answer. We find that said motion was rightly allowed by the trial judge.

The district court heard the merits of the case on the pleadings, the undisputed facts in the affidavits, briefs and oral argument. Plaintiff's position was the same as now. It asserted it had not been paid for carrying the particular freight, that it was unable to obtain the payment from consignor, therefore consignee must pay. It here continues that line of argument. It cites Boston & Maine RR. Co. v. Hooker, 233 U.S. 97, 34 S.Ct. 526, 58 L.Ed. 868 (1914) where the proper freight charges had to be paid regardless of error in the statement of charge by the carrier. It alludes to other instances where there has been a deviation from the published rate. Illinois Steel Co. v. B. & O. RR. Co., 320 U.S. 508, 513, 64 S.Ct. 322, 88 L.Ed. 259 (1944) is said to state the governing principles for this appeal. The holding there is that "If the non-recourse clause is not signed by the consignor, he remains liable to the carrier for all lawful charges. * * * if delivery is made to the consignee without payment, the consignee is also liable for all freight charges. But if the non-recourse clause is signed by the consignor and no provision made for the prepayment of freight, delivery of the shipment to the consignee relieves the consignor of liability, * * * and acceptance of the delivery establishes the liability of the consignee to pay all freight charges." In this appeal the consignor did not sign the no-recourse clause and plaintiff carrier had disposed of any possible doubt regarding the prepayment of the freight by stamping the straight bill of lading "prepaid". On that express representation and with unchallenged good faith, appellee, in paying the shipper for its merchandise, performed the balance of its purchase agreement by including the amount of the freight charges. Appellant asserts it is suing as a trustee for the protection of the public and contends that under Great Northern Ry. Co. v. Hyder, 279 F. 783, 786 (W.D.Wash.1922) it is not estopped from collecting the freight charge from appellee. In that opinion the expressly stated reason for the holding that the carrier there was not estopped was, "because it did no act and made no representation on which the consignee relied, and when the consignee accepted the goods, it deprived the public of that lien." In this suit as noted the railroad by its acts and representations advised appellee that its consignor had prepaid the freight thus pointing out that appellee in accordance with its agreement with the shipper should reimburse the latter for the freight charges it had paid.

We find no authentic public policy problem involved in this dispute. The little decisional law there is dealing with our situation supports that view. Davis v. Akron Feed & Milling Co., 296 F. 675, 677 (6 Cir. 1924); So. Pacific Co. v. Valley Frosted Foods Co., 178 Pa.Super. 217, 219, 116 A.2d 70 (1955). Appellant argues that this opinion was impliedly overruled in Acme Fast Freight, Inc. v. Heffler, 197 Pa.Super. 633, 180 A. 2d 110 (1962). We find no justification for that conclusion. The vital factual differentiation is that there is nothing in Acme to suggest that the bill of lading there was marked "prepaid" or that the consignee would be forced to pay again after so doing. See also Griffin Grocery Co. v. Pennsylvania RR. Co., 93 Ga.App. 546, 92 S.E.2d 254, 256 (1956).

This brings us to appellant's final point, "even if the defense of estoppel has been appropriately pleaded defendant still must prove that defense at a trial on the merits." Our United States v. Blumenthal, 3 Cir., 315 F.2d 351, 352–353 is named as upholding this view in the circumstances before us. We said there "In considering such a motion by the plaintiff for judgment on the plead-

ings, the question for judgment determination is whether on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law." In this appeal we must agree with the trial judge that in the district court "The matter is presented on the pleadings, the undisputed facts contained in the affidavits and upon the briefs and oral arguments of counsel." The court decided the issue on the pleadings themselves since "The affidavits of the parties raise no new matters outside of the pleadings, but merely particularize them * *." And the court said "No genuine issue of material fact being presented, but only a question of law upon the merits, a judgment will be entered on the pleadings, as amended in favor of the defendant." We are satisfied that the result reached by the district court is sound but prefer to base our finding on the entire record. Lanova Corporation v. National Supply Co., 116 F.2d 235 (3 Cir. 1940). As we view the proofs, in addition to the admitted assumptions by the carrier, the uncontradicted affidavit of appellee's president clearly establishes estoppel against the railroad forcing appellee to pay the freight charges a second time. As we have seen the railroad's theory in pressing its freight charge claim has always been that it was acting as a trustee for the public under the quoted statutes. There has never been the slightest indication that it contested the factual circumstances. It had every opportunity to contradict the facts set out in the appellee's affidavit, in the affidavit it filed but it did not do so. It seems to us that the full picture of the dispute was before the district court for final determination and properly so resolved. The circumstance that the decision was not only against the moving party but in favor of the defendant was well within the authority of the trial court. 6 Moore, Federal Practice 2d Ed. 1953 ¶ 56.12 "Summary Judgment for Non-Moving Party," pp. 2088–91; United States v. Cless, 150 F.Supp. 687 (M.D.Pa.1957),

affd. 254 F.2d 590 (3 Cir. 1958); Local 453, etc. v. Otis Elevator Co., 314 F.2d 25, 27 (2 Cir. 1963).

The minutes of the hearing on the merits in this litigation which were not included in appellant's appendix, indeed never even transcribed until this court so directed, bear out in detail the hearing situation as set out above.

On page 4 of the hearing transcript, the railroad by its attorney accepted the fact that the defendant consignee had paid the freight charges. On page 9, said attorney admitted that the railroad had issued the bill of lading. The following dialogue between the court and railroad counsel shows this, together with the admission that the railroad had marked the bill of lading prepaid.

"THE COURT: Let me ask you something; who issued the bill-of-lading, the railroad or the consignor?

MR. DAVIS: Well, the railroad, sir.

THE COURT: The railroad?

MR. DAVIS: Yes, sir.

THE COURT: And they had marked on there 'Prepaid,' hadn't they?

MR. DAVIS: Yes, sir. But you will find several cases, sir—"

On page 10 the railroad attorney mentioned a situation where a railroad had charged the wrong rate, saying "In this type of case they have the right to look to the consignee." Then came the following dialogue between the judge and that attorney:

"THE COURT: That is an innocent mistake. But what right does the railroad have to put 'Prepaid' on a bill-of-lading when you say they were not paid by the consignor?

MR. DAVIS: What happened was—

THE COURT: And leads the consignee to believe that everything has been paid, and then when he finds out it hasn't, he pays the consignor, the shipper.

MR. DAVIS: That is right.

THE COURT: And now the railroad comes along and says, 'We didn't get our money, we want it from you.'

MR. DAVIS: Well, the cases say, sir, that once the consignor accepts the goods—

THE COURT: The consignor?

MR. DAVIS: I am sorry. Once the consignee accepted the goods.

THE COURT: Yes?

MR. DAVIS: They become liable for the payment of the freight if in fact the railroad does not receive payment.

THE COURT: Despite the fact that the railroad issued the bill-of-lading and marked 'Prepaid' on it?

MR. DAVIS: Yes, sir.

THE COURT: All right."

The trial judge was reminded that there were three items before him. He answered, "I know, the Interrogatories, there is the amendment to the Answer, and the judgment on the pleadings." He asked the railroad attorney if he had any objections to answering the interrogatories. The lawyer answered "We do, sir, because we say the Interrogatories are immaterial. We say that when they said in their Answer—". The court

then said "All right. I understand what the issues are."

"MR. DAVIS: (for the railroad) *We say it is strictly a legal matter.* (Emphasis supplied)

THE COURT: I will let you have a memo on it rather quickly.

Thank you." [1]

The judgment of the district court will be affirmed.

VAN DUSEN, Circuit Judge (dissenting).

I respectfully dissent from the last five paragraphs of the majority opinion (pp. 6–11). The docket entry covering the hearing of 9/15/67, which resulted in the opinion of 11/27/67 and the order of 12/13/67 [1] from which this appeal is taken, reads as follows:

"9–15–67 Hearing on motions by (1) plaintiff for judgment on the pleadings; and, (2) defendant for an order permitting amendment to answer; and, (3) plaintiff

---

[1.] Fountain v. Filson, 336 U.S. 681, 683, 69 S.Ct. 754, 93 L.Ed. 971 (1949) in the language quoted by the dissent shows it has no relevancy here. In Fountain the plaintiff never had the opportunity to dispute the material facts of the claim urged against her. In this appeal, the railroad not only had the opportunity to dispute the material facts of appellee's defense but categorically admitted all those material facts. The railroad's sole position has been, as it is now, that even with such admissions, under the Interstate Commerce Act, including its 1927 amendment and Section 7 of the Uniform Bill of Lading Act, it (the railroad) is entitled to have the consignee appellee pay twice. All of the above is discussed at length earlier in this opinion together with the decisions cited by appellant in support of that position.

The only other opinion quoted in the dissent is Cram v. Sun Insurance Office, Ltd., 375 F.2d 670 (4 Cir. 1967). There, the Fourth Circuit states " * * * it became apparent that material facts were in issue, * * *." Again it is noted that appellant does not assert that material facts are at issue in this appeal. They, as said, have all been conceded.

The one item still discussed by the railroad is its fantastic theory that consignee is bound to pay for its freight a second time under the accepted facts of this appeal.

[1.] The order of 12/14/67 provides:
" * * * that the defendant's answer be amended by adding thereto the following separate defense:
FOURTH DEFENSE.
The plaintiff is estopped from making a claim for freight charges against the defendant.
ant, and it is further
"ORDERED, that the plaintiff's motion for judgment on the pleadings be and the same hereby is denied, and it is further
"ORDERED, that judgment on the pleadings be entered in favor of defendant, and it is further
"ORDERED, that plaintiff's motion to strike defendant's interrogatories be denied as moot, and it is further
"ORDERED, ADJUDGED AND DECREED that judgment on the pleadings be entered in favor of defendant against the plaintiff without costs, dismissing the Complaint, with prejudice."

for an order to strike interrogatories—Ordered motions held under advisement."

The following first statements of the court and counsel for plaintiff at the September 15 hearing and the language in the transcript from pp. 2–11, inclusive, considered as a whole, indicate that the language quoted in the majority opinion was used solely as part of an argument on a Motion For Judgment on the Pleadings concerning issues of law and not to make a factual record:[2]

"THE COURT: Mr. Davis, you are making the first motion, are you not, for judgment on the pleadings?

"MR. DAVIS: Yes, sir. I think all these motions are kind of wrapped up together because your decision on the *first* motion, judgment on the pleadings, will have a decided effect on the other two." (Emphasis supplied.)

Without any notice to the plaintiff that the court was considering the entry of judgment against it and without what seems to me proper proof on the record of the person who marked the uniform straight bill of lading prepaid,[3] which is the basis of defendant's estoppel defense, the District Court found that the carrier marked the bill of lading "prepaid" and that the doctrine of equitable estoppel applied (opinion at 18a and 21a).

Although summary judgment may be entered for the non-moving party where all the facts are before the court,[4] I be-

2. It is noted that, since the transcript of the September 15 hearing was apparently not available in the District Court until February 1969 and was not added as a supplement to the record in this court until that month, counsel may have never seen this transcript and clearly had no opportunity to comment on it, either at oral argument or in their briefs filed in this appeal.

3. The averments of the Answer "shall be taken as denied or avoided." See F.R. Civ.P. 8(d); 2A Moore's Federal Practice (2nd Edition), ¶ 12.15, p. 2270. The affidavit filed by defendant's president does not allege who made "the notation on the uniform straight bill of lading that freight had been prepaid." Defendant claims it relied on this notation in paying the consignor the freight. The Form of Domestic (Straight) Bill of Lading prescribed by the Interstate Commerce Commission (52 ICC 671, after p. 740) contains the following, disclosing that some person, who in this case apparently could have been the consignor, must fill in the indication of prepayment as well as the receipt for the prepaid freight:

"If charges are to be prepaid, write or stamp here, 'To be Prepaid.'
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"Received $. . . . . . . . . to apply in prepayment of the charges on the property described hereon.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                    Agent or Cashier,
Per . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
(The signature here acknowledges only the amount prepaid.)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Furthermore, there is no showing in the record that this part of the affidavit was made on personal knowledge or that "the affiant is competent to testify to" the above-quoted allegation in the affidavit, as required by F.R.Civ.P. 56(e).

4. See 6 Moore's Federal Practice (2nd Ed. 1965), ¶ 56.12, at pp. 2243–2246, where this language appears:

"Care should, of course, be taken by the district court to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law.
        *       *       *       *       *
"It should be very clear that all of the facts bearing on personal liability are before the court and that these establish the defendant's personal liability as a matter of law. * * * A party moving for summary judgment, such as the defendant in the supposed case, may make certain concessions in favor of his adversary for purposes of the motion that do not carry over and support summary judgment for the adversary, the plaintiff in the supposed case. And, furthermore, a party in whose favor summary judgment is rendered has the burden of establishing that there are not disputed material facts. It does not, therefore, follow that because summary judgment in favor of the defendant on the issue of personal liability was erroneous that summary judgment for the plaintiff on that issue is proper. Un-

lieve the following language of the Supreme Court of the United States in Fountain v. Filson, 336 U.S. 681, 683, 69 S.Ct. 754, 756, 93 L.Ed. 971 (1949), requires that this case be remanded to the District Court in order to give the plaintiff an opportunity to offer a defense to an appropriate motion by defendant or, at the trial, to submit its evidence of the lack of factual basis for the defendant's estoppel claim:

> "Summary judgment may be given, under Rule 56, only if there is no dispute as to any material fact. There was no occasion in the trial court for Mrs. Fountain to dispute the facts material to a claim that a personal obligation existed, since the only claim considered by that court on her motion for summary judgment was the claim that there was a resulting trust. When the Court of Appeals concluded that the trial court should have considered a claim for personal judgment it was error for it to deprive Mrs. Fountain of an opportunity to dispute the facts material to that claim by ordering summary judgment against her. The judgment of the Court of Appeals is, therefore, reversed and the cause remanded to the District Court for further proceedings in accordance with the opinion of the Court of Appeals as here modified."

See, also, Cram v. Sun Insuranc Office, Ltd., 375 F.2d 670 (4th Cir. 1967); cf. United States v. Blumenthal, 315 F.2d 351 (3rd Cir. 1963). In the *Cram* case, *supra*, at 675, the court said:[5]

> "Cram moved for summary judgment on the theory that the written contract, together with the uncontradicted testimony of his and Wahab's intent, removed all question of fact from the case. There is no evidence that he

intended for the court to try the factual issues presented by the case in the event it rejected his theory of the case. Once his theory of the case was rejected and it became apparent that material facts were in issue, Cram had the right to present to the trier of fact, all the evidence he could produce and to argue the facts in support of his interpretation of the contract."

---

less, then, the case is clear, within the qualifications and limitations just stated, the appellate court should not order summary judgment for the non-moving party, but should remand for further development of the case, which may include the making of a motion for summary judgment by the prior non-moving party who prevailed on the appeal."

5.  Also, this language appears at pp. 673–674: "Neither party, by moving for summary judgment, concedes the truth of the allegations of his adversary other than for purposes of his own motion. A movant may contend that under his theory of the case, no substantial issue of fact exists, while under the adversary's theory factual questions are in issue."