ESPERANZA RODRÍGUEZ BARREAL VDA. DE MARI, peticionaria, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE MAYAGÜEZ, HON. FRANK VIZCARRONDO VIVAS, JUEZ, recurrido; ADMINISTRACIÓN DE HOGARES DE AGRICULTORES, interventora.

*Número*: 2570        *Resuelto*: 6 de junio de 1963

*José Sabater,* abogado de la peticionaria; *Francisco A. Gil, Jr., Fiscal Federal,* Corte de Distrito de Estados Unidos para Puerto Rico, y *Lemuel Marqués, Jr.,* abogado en Puerto Rico a cargo de la Oficina del Abogado General del Departamento de Agricultura de los Estados Unidos, abogados de la interventora.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Doña Esperanza Rodríguez Barreal viuda de Mari, ejecutó una primera hipoteca que en garantía de un precio aplazado, tenía constituida a su favor sobre una propiedad de don Alejandro Rodríguez y su esposa doña María Rodríguez. Al momento de ejecutarse la propiedad, ésta aparecía gravada posteriormente por tres créditos refaccionarios a favor de una agencia federal, la Administración de Hogares de Agricultores, la cual fue debidamente notificada del procedimiento de ejecución en la forma provista por las leyes aplicables al caso. La acreedora posterior no compareció a la subasta a satisfacer el crédito preferente de la ejecutante y subrogarse

en los derechos de dicha ejecutante. En cuanto a la cosecha en pie al momento de la ejecución, parece que la cosecha fue recolectada por el deudor hipotecario y su producto entregado a un comerciante con instrucciones que lo pusiera a disposición de la Administración de Hogares de Agricultores y que la agencia le ha ordenado a dicho comerciante que retenga el producto de la cosecha hasta que la agencia le avise.

Después de ejecutada la propiedad y recolectada su última cosecha, en la forma anteriormente indicada, Doña Esperanza Rodríguez Barreal viuda de Mari, solicitó del Tribunal Superior de Puerto Rico, Sala de Mayagüez, la cancelación de los tres créditos refaccionarios a favor de la Administración de Hogares de Agricultores. Compareció entonces dicha Administración oponiéndose a la cancelación de sus créditos refaccionarios, porque de acuerdo con la Ley de Refacción Agrícola de Puerto Rico, los créditos refaccionarios gozan de preferencia sobre cualquier hipoteca anteriormente inscrita y por la falta de jurisdicción de la Sala para disponer de unos créditos refaccionarios, propiedad de los Estados Unidos de América, sin haber sido dicho gobierno debidamente emplazado. La ilustrada Sala sentenciadora, según demuestra la minuta de la vista celebrada, parece haber estado conforme con el primer criterio expuesto por la Administración de Hogares de Agricultores. Expedimos un auto de *certiorari* para revisar la resolución emitida verbalmente por el ilustrado Juez recurrido, en la sesión pública de la Sala de Mayagüez celebrada el 28 de septiembre de 1959, negándose a ordenar la cancelación de dichos créditos posteriores.

En el recurso ante nos, la acreedora ejecutante doña Esperanza Rodríguez Barreal viuda de Mari, insiste en su derecho a que dichos créditos refaccionarios posteriores sean cancelados por no haber producido el remate de la finca una cantidad suficiente para satisfacer su hipoteca y los créditos refaccionarios posteriores, de acuerdo con las disposiciones de la Ley Hipotecaria de Puerto Rico y la Administración de

Hogares de Agricultores reafirma su criterio que los créditos refaccionarios, aunque sean posteriores, gozan de prioridad sobre cualesquiera hipotecas anteriores, alegando además, que tratándose de una acción contra los Estados Unidos de América, la ilustrada Sala sentenciadora no había adquirido jurisdicción sobre dicho cuerpo político por no haber sido debidamente citado mediante un emplazamiento dirigido al Fiscal de la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico y el envío por correo certificado de una copia de la demanda al Procurador General de los Estados Unidos. La cuestión litigiosa ha sido ardua e inteligentemente argumentada por los ilustrados letrados de ambas partes.

En cuanto al primer aspecto de la controversia, la ley aplicable es la Sec. 4 de la Ley Núm. 37 de 10 de marzo de 1910, según enmendada por la Ley Núm. 66 de 1ro. de agosto de 1925—5 L.P.R.A. sec. 167—que dispone: "El crédito de refacción agrícola desde la fecha de su presentación en el Registro que más adelante se establece tendrá preferencia a los créditos posteriores de cualquier otra naturaleza, excepción hecha de los créditos por contribuciones a favor del Pueblo de Puerto Rico, según lo dispone la ley, *en cuanto a los frutos objeto del gravamen*, durante los años comprendidos en el contrato y siempre hasta que el acreedor sea completamente satisfecho del importe total de su crédito. En el caso de que el acreedor no hubiese sido íntegramente satisfecho del crédito, durante el plazo del contrato, deberá concertar con el deudor el oportuno documento de prórroga, o promover la demanda a que atañe la sección 9, dentro de los seis meses subsiguientes al vencimiento del contrato. En consonancia con lo dispuesto en el artículo 363 del Código Civil, el adquirente en pública subasta, de una finca cuyos frutos estén gravados con un crédito refaccionario anotado en el registro de la propiedad, o en el especial dispuesto en esta Ley, ora se haya verificado la subasta en una acción ordinaria o en procedimiento para

el cobro de una hipoteca inscrita con posterioridad al crédito refaccionario, o con anterioridad a éste pero constituida con posterioridad a la vigencia de esta Ley, deberá optar entre permitir al acreedor refacionario o al primero de éstos, si fueren varios, que recolecte y perciba los frutos pendientes sujetos al crédito refaccionario y realice todas las operaciones de cultivo y preparatorias a la recolección, o resarcir a dicho acreedor refaccionario el valor en tasación de los frutos al tiempo de posesionarse de ellos, hasta el montante del crédito refaccionario adeudado, no excediendo del que se hubiere consignado en la anotación. En este último caso se procederá a la tasación como si se tratara de ejecutar una sentencia de desahucio contra un demandado que reclamare mejoras, labores y plantíos. El acreedor refaccionario que percibiere los frutos tendrá la obligación de rendir cuenta al deudor, de abonar a su crédito el producto líquido que obtuviere o la parte necesaria del mismo, y devolver el remanente, si lo hubiere, a los posteriores acreedores refaccionarios, al deudor, o al subastador, según fuera el caso, y se dispusiere por la corte. Será competente para conocer de estos procedimientos incidentales, la corte que hubiere conocido del procedimiento originador de la subasta, en los trámites de ejecución de la sentencia recaída en dicho procedimiento." (Bastardillas nuestras.)

El Art. 363 (Código Civil de 1902; 290 ed. 1930) a que hace referencia la disposición anterior dispone: "El que percibe los frutos tiene la obligación de abonar los gastos hechos por un tercero para su producción, recolección y conservación".

La Sec. 4 está relacionada con la Sec. 14 de la misma ley que dispone: "Contra un título anotado, con arreglo a esta Ley, no podrá prevalecer ningún título o documento no anotado o inscrito anteriormente en el Registro de la Propiedad o en el de Contratos Agrícolas. A las anotaciones y notas marginales en el Registro de contratos agrícolas serán aplicables los preceptos de la Ley Hipotecaria, en cuanto no se

opongan a los de la presente; pero en ningún caso se exigirá [para estas anotaciones] la previa inscripción de la finca . . . en el Registro de la Propiedad", y con los Arts. 1823 y 1824 del Código Civil de Puerto Rico que disponen: "Con relación a determinados bienes inmuebles y derechos reales del deudor gozan de preferencia: . . . 2—Los créditos por refacción agrícola, *en cuanto a los frutos de las fincas* objeto de la refacción, *según lo determinado en la ley especial sobre materia* . . . 4—Los créditos hipotecarios y los refaccionarios, anotados e inscritos en el registro de la propiedad, sobre los bienes hipotecados o que hubiesen sido objeto de la refacción." (Bastardillas nuestras.)

La frase clave de la Sec. 4, extractada en su parte pertinente, sería la siguiente: El adquirente en pública subasta de una finca cuyos frutos estén gravados con un crédito refaccionario ora se haya verificado la subasta en una acción ordinaria o en procedimiento para el cobro de una hipoteca inscrita con *posterioridad* al crédito refaccionario o con *anterioridad* a dicho crédito, deberá optar entre permitir al acreedor refaccionario que recolecte y perciba *los frutos pendientes* o resarcir a dicho acreedor refaccionario el valor de tasación de los frutos al *tiempo de posesionarse de ellos* y en este último caso se procederá a la tasación como si se tratara de ejecutar una sentencia de desahucio contra un demandado que reclamare mejoras, labores y plantíos.

Como se ve, lo que el legislador ha querido es proteger el gravamen sobre los *frutos pendientes* al momento de la ejecución, y no los frutos futuros después de la ejecución. La razón para haber creado esta preferencia es obvia: De acuerdo con el Art. 110 de la Ley Hipotecaria: "La hipoteca se extiende a las accesiones naturales, a las mejoras, a los *frutos pendientes* y rentas no percibidas al vencer la obligación. . ." y de acuerdo con el Art. 111 de la misma ley "se entenderán hipotecados juntamente con la finca, aunque no se mencionen en el contrato . . . 3—Los frutos que al tiempo en que deba

hacerse efectiva la obligación hipotecaria, *estuvieren pendientes de los* árboles o plantas, o ya cogidos, pero no levantados ni almacenados". La prelación también se da en cuanto a los *frutos pendientes* pues queda subordinada a lo que determina la Ley especial de refacción.

Lo que la Ley de Refacción Agrícola de Puerto Rico ha pretendido, frente a una hipoteca anteriormente inscrita, es neutralizar el derecho del acreedor hipotecario de hacer suyos los frutos pendientes al momento de la ejecución, puesto que es el caudal del acreedor refaccionario el que ha ayudado a producir los frutos pendientes. La referencia a la ejecución de la sentencia de desahucio aclara todavía más la intención legislativa. En el caso del arrendamiento es el caudal del arrendatario el que ha ayudado a producir dichos frutos.

■ Es claro que si la ejecución produce más del importe de la hipoteca, el resto se aplica al crédito refaccionario, y en caso de que tanto el acreedor hipotecario como el acreedor refaccionario queden pagados hasta el total de sus respectivas acreencias, el sobrante que produzca la ejecución se le entregará al deudor hipotecario.

■ La garantía adicional del acreedor refaccionario ante un gravamen hipotecario anterior la constituye su derecho, como acreedor posterior, en sentido hipotecario estricto, en asistir a la subasta, pagar el crédito hipotecario y cualesquier otros créditos preferentes al suyo y adquirir la propiedad. Pero fuera de ésto, su garantía está limitada a los frutos pendientes al momento de la ejecución.

En cuanto al segundo aspecto de la controversia, la ley aplicable es la Sec. 2410 de la Ley Pública Núm. 773 de 25 de junio de 1948 para revisar, codificar y enactar como ley el título 28 del Código de los Estados Unidos titulado Código Judicial y de la Judicatura—62 United States Statutes at Large 972–973, según enmendada; 28 USCA 189–190, suplemento del 1963 págs. 82–83—que en cuanto a las acciones que afecten bienes en los cuales Estados Unidos tienen un grava-

men constituido a su favor, dispone: (*a*) Sujeto a las condiciones señaladas en esta sección y en la Sec. 1444 de este título para la protección de los Estados Unidos, los Estados podrán ser incluidos como parte en cualquier acción civil o pleito en cualquier corte de distrito (incluyendo la "Corte de Distrito para el Territorio de Alaska") [eliminado por enmienda de 1958] o en cualquier corte estatal con jurisdicción sobre la materia, para determinar la validez de un título o para la ejecución de una hipoteca u otro gravamen constituido sobre propiedad real o personal en la cual los Estados Unidos tengan o reclamen una hipoteca u otro gravamen.

(*b*) La demanda deberá exponer detalladamente la naturaleza del interés o gravamen de los Estados Unidos. En las acciones iniciadas en las cortes estatales se emplazará a los Estados Unidos entregando el emplazamiento y copia de la demanda al Fiscal de los Estados Unidos en el distrito en el que se entabló la acción o a un fiscal auxiliar de los Estados Unidos o a un empleado autorizado a recibir emplazamientos por el Fiscal de los Estados Unidos para ese distrito mediante documento archivado en la secretaría de la corte en la cual se inició la acción y enviando copias del emplazamiento y la demanda, por correo registrado, (o "por correo certificado") [Se añadió esta frase por enmienda en 1960] al Procurador General de los Estados Unidos en Washington, Distrito de Columbia. En tales acciones los Estados Unidos podrán comparecer y contestar la demanda, hacer alegaciones o tomar excepción dentro de los sesenta días siguientes al emplazamiento, o dentro de aquel término adicional que la corte le conceda.

(*c*) La liberación de los gravámenes y cargas a favor de los Estados Unidos constituidos sobre bienes vendidos judicialmente dentro de tal acción o pleito se regirá por lo que disponga respecto a esa materia la ley local del lugar donde se encuentran los bienes. La venta de bienes para el cobro de un gravamen inferior a uno de los Estados Unidos, se hará sujeta a y sin alterar el gravamen a favor de los Estados

Unidos, a menos que los Estados Unidos consientan en que la propiedad sea vendida libre de gravámenes y el producto de la venta dividido entre las partes proporcionalmente. Cuando se venda un bien inmueble para satisfacer un gravamen anterior a uno de los Estados Unidos, los Estados Unidos tendrán un año, a contar desde la fecha de la venta, para redimir la propiedad. En cualquier caso en que una deuda a favor de los Estados Unidos sea exigible, los Estados Unidos podrán pedir, por vía de remedio afirmativo, la ejecución de su propio gravamen y cuando una propiedad sea vendida para satisfacer un primer gravamen a favor de los Estados Unidos, éstos podrán ofrecer en la sabasta una cantidad que no exceda del valor de su crédito y los gastos de la venta, según lo ordene, a su discreción, el jefe del departamento o agencia que tenga a su cargo la administración de las leyes con arreglo a las cuales surge la reclamación de los Estados Unidos.

(*d*) Cualquier persona que tuviere constituido a su favor un gravamen sobre propiedad real o personal que esté debidamente inscrito en la jurisdicción donde radican los bienes y que sobre esos mismos bienes esté constituido un gravamen inferior, a favor de los Estados Unidos, que no sea uno por contribuciones no pagadas, podrá solicitar por escrito al oficial a cargo de la administración de las leyes con arreglo a las cuales surge el derecho de los Estados Unidos la cancelación del mismo. Si después de realizar una investigación ese oficial creyere que el producto de la venta de los bienes no sería suficiente para satisfacer total o parcialmente el gravamen a favor de Estados Unidos, o que el crédito ha sido satisfecho, o que debido al transcurso del tiempo o cualquier otra razón resulta incobrable, deberá así informarlo al Contralor General quien podrá expedir un certificado liberando la propiedad de tal gravamen.

■ Disponiendo el inciso (*c*) que la liberación de los gravámenes y cargas a favor de los Estados Unidos se regirá por lo que disponga respecto a esa materia la ley local del lugar

donde se encuentren los bienes, es bueno reseñar brevemente el procedimiento para ejecutar una hipoteca de acuerdo con la ley de Puerto Rico. La ejecución más sumaria que concede nuestra Ley, se inicia con un escrito radicado en el Tribunal competente acompañado de una certificación del Registrador de la Propiedad informando los otros gravámenes y cargas a que estén afectos los bienes hipotecados. Si hay gravámenes preferentes o anteriores a la hipoteca que se ejecuta, el comprador, rematante o adjudicatario en la subasta los tomará a su cargo y responderá de los mismos pues la ejecución de una hipoteca posterior (*junior lien*), no libera a la propiedad hipotecada de sus gravámenes anteriores, como ocurre en algunos estados de la Unión. Si hay gravámenes posteriores, la ejecución de la hipoteca anterior (*senior lien*) libera a la propiedad hipotecada de sus gravámenes posteriores, pero cualquier exceso sobre la hipoteca que se ejecuta que produzca la subasta se aplica al pago de los gravámenes posteriores.

En cuanto a la notificación del procedimiento, tan pronto se radica el escrito inicial, el Tribunal expide un auto de requerimiento ordenándole al deudor hipotecario a pagar la hipoteca, sus intereses vencidos y el crédito adicional para costas y honorarios de abogado dentro del término de treinta días. Los acreedores posteriores deben ser notificados personalmente del auto de requerimiento, para brindarle la oportunidad de pagar ellos el crédito preferente que se ejecuta y subrogarse en los derechos del primer acreedor. Si el deudor hipotecario, o en su defecto, los acreedores posteriores, no pagan la hipoteca que se ejecuta, el Tribunal ordena que la propiedad hipotecada sea vendida en pública subasta, publicándose edictos a tal efecto por un término no menor de veinte días. Por lo general, este segundo trámite dura como treinta días en adición al primer término de treinta días concedidos al deudor hipotecario o a los acreedores posteriores para pagar la hipoteca antes de su venta en pública subasta. La ejecución menos sumaria es una acción ordinaria, pero en la misma,

como también se limita a la finca hipotecada, y las exigencias de las notificaciones son idénticas, el cuadro de las preferencias y los derechos de los acreedores posteriores a subrogarse mediante el pago de la hipoteca, no varía.

■ Como se ve, el procedimiento ejecutivo hipotecario nuestro, le brinda una oportunidad razonable al acreedor posterior (*junior lien*) para defender sus derechos siempre que esté dispuesto a satisfacer el gravamen anterior (*senior lien*). En cuanto a la Sec. 2410—aplicable a Alaska y Puerto Rico, según la historia legislativa—la jurisprudencia norteamericana ha establecido que los derechos de los Estados Unidos de América como acreedor posterior son los mismos que tendrían los acreedores posteriores dentro de las distintas legislaciones estatales; además, la clase de notificación que debe hacerse para disponer de estos gravámenes posteriores es la misma estatuida por la legislación estatal y no la establecida por la Sec. 2410: *United States* v. *Brosnan*, 363 U.S. 237, 4 L. Ed. 2d 1192 (Harlan) (1960), cita precisa a las págs. 241–250 U.S., 1196–1201 L.Ed.2d; *United States* v. *Cless*, 254 F.2d 590 (Staley) (1958), cita precisa a las págs. 592–594.

■ En términos de justicia estricta, lo mas que la Administración de Hogares de Agricultores hubiera podido obtener, de acuerdo con los términos de su crédito refaccionario, hubiese sido lo que obtuvo dentro del procedimiento utilizado: el pago de los frutos pendientes al momento de ejecutarse la finca, independientemente del procedimiento de notificación utilizado. Cuando el crédito refaccionario se extienda a otros años adicionales al de la cosecha en pie al momento de la ejecución, el único remedio es pagar el montante de la hipoteca que se ejecuta anterior a dichos créditos y convertir dichos créditos refaccionarios sucesivos en verdaderos créditos hipotecarios anteriores a cualquier otro gravamen: Arts. 59–64 de la Ley Hipotecaria.

La deferencia en favor de los créditos anteriores de

acuerdo con la legislación estatal está claramente expuesta por la jurisprudencia norteamericana. La idea del Congreso no fue sustituir los sistemas de inversión de la economía privada de los distintos estados por un plan federal, sino suplir otras fuentes de crédito dentro de un plan de rehabilitación capaz de afrontar un más amplio margen de riesgo que el que podría afrontar la economía privada.

*Debe revocarse la resolución de 28 de septiembre de 1959 por el Tribunal Superior de Puerto Rico, Sala de Mayagüez, y ordenarse la cancelación de los créditos posteriores solicitada por la peticionaria.*