Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel II

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO<br>Peticionario<br><br><br>v.<br><br><br>SUCN. RUTH INÉS RIVERA MARTÍNEZ y OTROS<br>Recurridos | KLCE202301158 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Coamo<br><br>Caso Núm. CO2022CV00250<br><br>Sobre:<br>Cobro de Dinero y Ejecución de Hipoteca |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

Adames Soto, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 17 de enero de 2024.

a.

El 4 de agosto de 2022, el Banco Popular de Puerto Rico, (el Banco o peticionario), presentó una *Demanda* en cobro de dinero y ejecución de hipoteca contra los miembros de la Sucesión de Ruth Inés Rivera Martínez, compuesta por Eddie Alexis Santos Rivera, Mariel Enid Santos Rivera, Carlos Javier Santos Rivera, Eddie Santos Rivera, *et al.,* por el impago de una obligación evidenciada mediante un pagaré por la cantidad de $47,005.00 de principal, garantizada mediante hipoteca inscrita en primer rango, sobre la finca número 7759 del Registro de la Propiedad de Puerto Rico, Sección de Barranquitas, al *folio* 76 del tomo 328 de Coamo, inscripción 6ta.

Superadas varias incidencias procesales, no pertinentes a la controversia ante nuestra consideración, el Tribunal de Primera Instancia

(TPI) dictó *Sentencia en Rebeldía,* el 13 de abril de 2023,[1] para su publicación por edicto. Luego, el 23 y 26 de mayo de 2023, ese mismo foro primario expidió *Orden y Mandamiento de Ejecución de Sentencia,* respectivamente.

Entre los documentos relativos al proceso de ejecución de subasta surgió que el inmueble se encontraba afecto a una segunda hipoteca, a nombre de Doral Mortgage Corporation, garantizando un pagaré por la cantidad de $21,000.00, por lo que dicha institución también fue notificada del asunto.

La primera fecha de subasta se celebró el 7 de agosto de 2023, donde el señor Melvin Ayala Martínez, en representación de Inmobiliaria Naihomy Inc., e Inversiones B-Tres Inc., se adjudicó la propiedad hipotecada por la cantidad de $77,500.00.

En consecuencia, el Banco, como acreedor en primer rango de la hipoteca, presentó una moción solicitando el retiro de fondos por la cantidad de $58,160.63. Por esto, el TPI emitió una *Orden* autorizando el retiro de fondos, según el total reclamado por el Banco.

Sin embargo, luego del TPI haber adjudicado la causa de acción del Banco, iniciada por este como acreedor en primer rango de la referida obligación hipotecaria, el 7 de septiembre de 2023, esta misma parte presentó una *Solicitud para el Retiro de Fondos **a Favor de Acreedor Posterior**.* (Énfasis provisto). En esencia, solicitó que el TPI ordenara el retiro de la suma restante de la ejecución de hipoteca, por ostentar la hipoteca en segundo rango pendiente. A tales fines, el Banco incluyó una declaración jurada haciendo constar ser el acreedor de la segunda hipoteca, constituida en garantía de pagaré a favor de Doral Mortgage Corporation, o a su orden, por la suma de $21,000.00, y acreditó que la cantidad adeudada por concepto de esa segunda hipoteca ascendía a la cantidad de

---

[1] Notificada el 17 de abril de 2023.

$33,826.59. En definitiva, habiendo advenido con la acreencia que correspondía a Doral Mortgage Corporation como acreedor en segundo rango de la hipoteca, el Banco reclamó el pago de lo debido en el proceso que antes había iniciado para el reclamo de su acreencia, como acreedor en primer rango de la hipoteca.

Ante esta nueva petición del Banco dentro del proceso inicial ya adjudicado, 12 de septiembre de 2023, el TPI emitió una *Orden* declarando *No Ha Lugar* la solicitud de la parte demandante, dejando establecido que dicha parte **deberá radicar la acción correspondiente**.[2] (Énfasis provisto).

Insatisfecho, el 22 de septiembre de 2023, el Banco presentó una *Solicitud de Reconsideración,* que también fue denegada.

Es así como el Banco acude ante nosotros, mediante Recurso de *certiorari,* planteado el siguiente error:

> Erró el Honorable Tribunal de Instancia, Sala Superior de Coamo al declarar No Ha Lugar el retiro de fondos del sobrante de la subasta celebrada el 7 de agosto de 2023, por la cantidad de $19,339.37, pertenecientes a la parte demandante Banco Popular de Puerto Rico por ser la acreedora de la segunda hipoteca que grava la propiedad.

Examinado el asunto planteado, nos resulta evidente que es innecesaria la comparecencia de los recurridos para disponer de la petición, de modo que así obraremos.

b.

El auto de *certiorari* permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *800 Ponce de León Corp. v. American International Insurance,* 205 DPR 163, 174 (2020); *Municipio Autónomo de Caguas v. JRO Construction,* 201 DPR 703, 710 (2019); *Medina Nazario v. McNeil Healthcare LLC.,* 194 DPR 723, 728 (2016). Es, en esencia, un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *García*

---

[2] Anejo III del *Recurso de certiorari,* pág. 5.

*v. Padró*, 165 DPR 324, 334 (2005). La expedición del auto descansa en la sana discreción del tribunal, y encuentra su característica distintiva, precisamente, en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Municipio Autónomo de Caguas v. JRO Construction,* supra*, pág. 711. El concepto discreción implica la facultad de elegir entre diversas opciones. *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). Claro, la discreción judicial no es irrestricta y ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Municipio Autónomo de Caguas v. JRO Construction,* supra*, págs. 711-712; *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52, establece que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por vía de excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios evidenciarios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En virtud de lo anterior, para poder ejercitar debidamente nuestra facultad revisora sobre un caso, primeramente, debemos determinar si el asunto del cual se recurre se encuentra dentro de alguna de las materias contempladas en la Regla 52.1, *supra.* De ser así, entonces procede evaluar si a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento,[3] 4 LPRA Ap. XXII-B, se justifica nuestra intervención. Con

---

[3]    A.  Si el remedio y la disposición de la decisión recurrida a diferencia de sus

todo, se ha de considerar que ninguno de los criterios contenidos en la Regla 40 citada, es determinante por sí solo para el ejercicio de nuestra jurisdicción. *García v. Padró, supra.*

En este ejercicio, nuestro máximo foro ha expresado que un tribunal apelativo no intervendrá con las determinaciones interlocutorias discrecionales procesales de un tribunal sentenciador en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Argüello v. Argüello,* 155 DPR 62, 78-79 (2001). Cónsono con esto, el mismo alto foro ha advertido que nuestro ordenamiento jurídico desfavorece la revisión de las determinaciones interlocutorias. *Medina Nazario v. Mcneil Healthcare LLC,* supra, pág. 730. Además, en su mayor parte, las determinaciones interlocutorias pueden esperar hasta la conclusión final del caso para ser revisadas en apelación, conjuntamente con la sentencia dictada en el pleito. *IG Builders et al. v. BBVAPR,* supra, pág. 336.

c.

La *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico,* Ley Núm. 210-2015, según enmendada, 30 LPRA sec. 6001 *et seq.* (*Ley del Registro de la Propiedad*), regula el procedimiento para la ejecución de hipotecas. En lo pertinente al asunto ante nuestra consideración, el Artículo 98 de la *Ley del Registro de Propiedad* establece que *los **acreedores hipotecarios posteriores** y los titulares de derechos reconocidos en sentencias finales y firmes debidamente anotados o*

---

fundamentos, son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberá ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

*asegurados mediante embargo al crédito que se ejecuta,* **podrán radicar dentro del procedimiento de ejecución una moción juramentada estableciendo la cuantía del crédito que se les adeuda.** 30 LPRA sec. 6135; *Ponce Federal v. Arblas Inds. Supp., Inc.,* 132 DPR 687,690 (1993). (Énfasis nuestro). Así las cosas, la referida ley indica que *una vez se declare con lugar la demanda y advenga final y firme la sentencia dictada en el procedimiento de ejecución de hipoteca, el tribunal ordenará, a instancia del ejecutante, la expedición del correspondiente mandamiento, para que el alguacil proceda a la subasta de los bienes hipotecados.* Artículo 99, 30 LPRA sec. 6136. A la referida subasta serán citados los acreedores que *hayan inscrito o anotado su derecho con posterioridad a la hipoteca objeto de ejecución y con anterioridad a la anotación de demanda.* Artículo 101, 30 LPRA sec. 6138. En particular, el Artículo 106 de la *Ley del Registro de la Propiedad* establece que en la subasta pueden concurrir como postores titulares de créditos hipotecarios vigentes y **posteriores** a la hipoteca que se cobra y ejecuta, que figuren como tales en la certificación registral. 30 LPRA sec. 6143. (Énfasis nuestro). Asimismo, dispone que, en tal caso, **pueden utilizar el montante de sus créditos o parte de alguno en sus ofertas.** *Íd.* (Énfasis nuestro).

Una vez celebrada la subasta y confirmada la adjudicación o venta, la *Ley del Registro de la Propiedad* establece que *el precio de venta se destinará, sin dilación, al pago del crédito hipotecario del acreedor.* Artículo 108, 30 LPRA sec. 6145. ***El sobrante lo depositará el alguacil en la secretaría del tribunal para que éste disponga lo que proceda respecto a los acreedores posteriores siguiendo el orden o rango que cada uno tenga en relación con el crédito ejecutado.*** *Íd.* (Énfasis nuestro). En el caso de no existir crédito o responsabilidad posterior, el remanente, si alguno, se le entregará al deudor o al tercer poseedor. *Íd.* Sobre lo anterior, el Tribunal Supremo ha manifestado que, *si hay*

*gravámenes posteriores, la ejecución de la hipoteca anterior (senior lien) libera a la propiedad hipotecada de sus gravámenes posteriores, pero cualquier **exceso sobre la hipoteca que se ejecuta que produzca la subasta se aplica al pago de los gravámenes posteriores.** Vda. De Mari v. Tribunal Superior,* 88 DPR 532, 541 (1963) (Énfasis nuestro).

d.

El peticionario sostiene que incidió el TPI al declarar sin lugar su *Solicitud para el retiro de fondos a favor de acreedor posterior* y decidir que éste *deberá radicar la acción correspondiente.[4]* En específico, el Banco arguyó que el foro primario se equivocó al determinar que no procedía el retiro de fondos del sobrante de la venta de la propiedad subastada en el pleito de epígrafe, ya que es el acreedor de la segunda hipoteca de la mencionada propiedad. Tiene razón. *Veamos.*

Según señalamos anteriormente, la *Ley del Registro de la Propiedad* dispone que una vez se declare con lugar y advenga final y firme la sentencia dictada en el procedimiento de ejecución de hipoteca, se procederá a la correspondiente subasta de los bienes que fueron hipotecados. 30 LPRA sec. 6136. Después que se celebre la referida subasta y se confirme la adjudicación o venta, el precio de la venta se destinará al pago del crédito hipotecario. 30 LPRA sec. 6145. En estas condiciones, el sobrante, si alguno, el alguacil lo depositará en la secretaría del tribunal para que éste disponga lo que proceda respecto a los acreedores posteriores **siguiendo el orden o rango que cada uno tenga en relación con el crédito ejecutado.** *Íd.* (Énfasis nuestro).

En el caso de autos, luego de advenir en final y firme la *Sentencia en Rebeldía* emitida por el TPI, se celebró la subasta el 7 de agosto de 2023. Ese día, la Inmobiliaria Naihomy Inc., e Inversiones B-Tres Inc., se adjudicó la propiedad hipotecada por la cantidad de $77,500.00. Consecuentemente,

---

[4] Apéndice III del recurso de *certiorari,* pág. 5.

el Banco, como acreedor de la hipoteca en primer rango, presentó una moción solicitando el retiro de fondos por la cantidad de $58,160.63. El 1 de septiembre de 2023,[5] el foro primario le ordenó al Alguacil del Tribunal que expidiera un cheque al Banco para el pago de la *Sentencia* por la cantidad solicitada.[6] Posteriormente, el Banco presentó una *Solicitud para el Retiro de Fondos a Favor de Acreedor Posterior* requiriendo la suma restante de la ejecución de hipoteca, por poseer la hipoteca en segundo rango pendiente. El peticionario acompañó su solicitud con una declaración jurada en la que hizo constar que es el acreedor de la segunda hipoteca, constituida en garantía de pagaré a favor de Doral Mortgage Corporation, o a su orden, por la suma de $21,000.00. Además, acreditó que la cantidad adeudada ascendía a $33,823.59. A tenor, solicitó el retiro de los fondos por la cantidad de $19,339.37, para abonar a la deuda pendiente.

Lo hasta aquí explicado debe servir como claro indicador de las razones por las cuales juzgamos que se justifica nuestra intervención con la *Resolución* cuya revocación nos solicita el peticionario. El Banco estableció su crédito como acreedor posterior en segundo rango con la presentación de la declaración jurada que acompañó a su solicitud para el retiro de los fondos. La *Ley del Registro de la Propiedad* **no** requiere procedimiento adicional para autorizar el retiro de los fondos en favor de los acreedores posteriores. Luego de confirmarse la venta y pagarse el crédito hipotecario del acreedor en primer rango, la *Ley del Registro de la Propiedad* dispone que el sobrante se depositará en la secretaría para que se disponga del mismo respecto a los acreedores posteriores **siguiendo el orden o rango**. Tal y como discutimos, el Banco acreditó ser el acreedor de la hipoteca en segundo rango del bien que se subastó, por lo cual, correspondía que el TPI

---

[5] Notificada el 5 de septiembre de 2023.
[6] Véase la entrada número 54 del expediente digital del caso que obra en el Sistema Unificado de manejo y Administración de Casos (SUMAC).

autorizara el retiro del sobrante del precio de venta, y se equivocó al no obrar de tal manera.

e.

Por los fundamentos expuestos, expedimos el auto de *certiorari* y revocamos la determinación recurrida. A tenor, devolvemos el caso al foro recurrido para que obre según aquí explicado.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones