HALSTEAD & MITCHELL COMPANY
and Halstead Metal Products, Inc.

v.

UNITED STEELWORKERS OF AMER-
ICA and Local No. 7032 of United Steel-
workers of America, Appellants.

No. 17558.

United States Court of Appeals,
Third Circuit.

Argued April 7, 1969.

Decided Dec. 1, 1969.

Rehearing Denied Jan. 6, 1970.

George H. Cohen, Bredhoff & Gottes-
man, Washington, D. C. (Bernard Klei-
man, Chicago Ill., Elliot Bredhoff, Mi-
chael H. Gottesman, Washington, D. C.,
Harry T. Guenther, Pittsburgh, Pa., on
the brief), for appellants.

Chester R. Gilchrist, Coulter, Gilchrist
& Dillon, Butler, Pa., for appellees.

Before KALODNER, GANEY and
VAN DUSEN, Circuit Judges.

OPINION OF THE COURT

GANEY, Circuit Judge.

This cause of action was begun in the
Court of Common Pleas of Butler Coun-
ty, Pennsylvania, by the appellees herein
against the appellants in the nature of a
petition for declaratory judgment. The
appellants thereafter removed the cause
of action to the Federal District Court
for the Western District of Pennsylvan-
ia. The petition for declaratory judg-

ment sought a court ruling on whether or not a dispute between the Company and the Union was arbitrable. The appellants filed an answer and, after a pretrial conference, a stipulation was entered into between the parties and the matter was then left to the court to dispose thereof by way of summary judgment. The court made two rulings, (1) denying defendants' motion for summary judgment, and (2) granting plaintiffs' petition for declaratory judgment.

The facts upon which this appeal is based are as follows: The Company reduced its work force in Departmental Units "B" and "C" of the appellee's plant, and this reduction was brought about by the Company's elimination of the third shift, the 11:00 p. m. to 7:00 a. m. stint, for a period of three work weeks or fifteen work days. Since the employees were working on a rotating or swing shift basis, several employees lost five days of work. The reduction in force was made without regard to the seniority of the employees affected. A stipulation agreed to by the parties, paragraph 6, provided as follows: "That if the reduction in work force had been done as the defendants maintained it should have been done, of these 192 employees, 85 would have lost 15 days' work and 107 would have lost no work."

The Union referred this matter of seniority to the Grievance Procedure set forth in the contract.[1] When a satisfactory adjustment was not reached by the parties after the appellant had completed the steps required under the Grievance Procedure of the Agreement, the Union sought to submit the dispute to an impartial arbitrator. The Company refused to join in this request on the ground that the dispute was in the area of the arbitration exclusion clause of the Agreement and so the Company would not agree to leave the issue of arbitra-

bility to an arbitrator. We, therefore, as did the district court, turn to the pertinent provisions of the Agreement in effect during the period of the layoffs.

Section 1 of Article III, entitled Management Rights, in pertinent part, provides:

"Except to the extent expressly abridged by a specific provision of this Agreement, the Company reserves and retains, solely and exclusively, all of its Common Law rights to manage the business. The sole and exclusive rights of management which are not abridged by this Agreement shall include, but are not limited to, its right to determine the existence of facts which are the basis of a management decision; to determine * * * volume of production * * * to discontinue processes or operations or to discontinue their performance by employees of the Company; to determine the number of hours per day or per week operations shall be carried on; to select and to determine the number and types of employees required; to assign work to such employees in accordance with the requirements determined by management; to establish and change work schedules and assignments; * * * to lay-off, terminate or otherwise relieve employees from duty for lack of work or other legitimate reasons, to determine the fact of lack of work * * * and otherwise to take measures as management may determine to be necessary for the orderly, efficient and profitable operation of its business— all to the best regard of its employees."

Article XI, Section 2, regarding Seniority Rights, provides as follows:

"In cases of layoff, reduction in forces, promotions, transfers and re-

---

I. Section 1 of Article XIII of the Agreement of August 18, 1966, setting the Grievance Procedure, provided: "If any controversy shall arise between the Company and the Union, or its members, as to the meaning or application of any provisions of this Agreement, there shall be

no suspension of work or slowdown on account of such difference or dispute, but such controversy as to the meaning or application of any provision of this Agreement shall be treated as a grievance and settled in accordance with the procedure hereinafter set forth."

call * * * the Company shall give due consideration to the seniority and the individual qualifications of the employee to perform the work in question and the efficient operation of the Plant."

Later, Article XI, Section 6(c) states:

"(c) Department unit seniority shall be considered in case of temporary layoffs and subsequent recall within a unit. However, if for any reason there is work fluctuation or equipment down time within a section or a departmental unit, necessitating a reduction in work force for a short period of time, not to exceed 15 work days, the Company shall have the right to layoff or make work assignments as are expedient without regard to seniority. If at the end of the period the work interruption continues, the employees will be reassigned based on their qualifications and departmental unit seniority."

The district court, taking into consideration the pleadings and the pretrial conference reports of the parties, as well as the stipulation and the pertinent provisions of the contract, as indicated, held that summary judgment should be denied and the plaintiffs' petition for declaratory judgment should be granted.

■■ It is readily apparent, in reading Article XI, Section 6(c), which points out, "However, if for any reason there is work fluctuation or equipment down time within a section or a departmental unit, necessitating a reduction in work force * * *", that the salient feature thereof is the reduction in the work force and not the name of the motivating reason, be it work fluctuation or equipment down time, as the latter words are merely illuminative of the cause of the reduction of the work force which is the essential factor prompting the bringing into play the seniority rule. It is the latter, and not the fluctuation or equipment down time, which is the core and essence of the provision. Without a reduction in force here, there would be no necessity for the application of the seniority rule, for to quibble over a minute delineation between the connotation of work fluctuation and a reduction in work force, if any there be, is mischievous word play, an indulgence in semantics, since a work fluctuation must, of necessity, be inherent in a work stoppage or reduction in force. While we are not insensitive to the progressive relationship fostered by the courts between Labor and Management,[2] we must, nevertheless, accede to the agreement reached by the parties usually after long hours of debate and a procedure hammering out an agreement with a give-and-take by both parties. Here, in our judgment, the language used in the Agreement is clear, precise and unambiguous, as set out heretofore, and especially the granting to management of the right to determine the facts necessitating any reduction in force, reciting them Indian fashion and with specificity. In the same vein Article XI, Section 6(c) abridges the seniority rights set forth in the earlier Section 2, carving out plainly the rights reserved to management arising out of a temporary reduction in force.

■ In addition, we must examine the concessions made by counsel for the Union and, as here recited, show that repeatedly at the pretrial hearing Counsel for the Union agreed that there were no factual matters to be resolved,[3] and he

2. Section 203(d) of the Labor-Management Relations Act of 1947, 29 U.S.C. § 173(d); United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Corp., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

3. A portion of the colloquy between the court and counsel at the pretrial hearing is as follows:

"THE COURT: All right. Your point is that the contract does not force you into seniority choice for a

**1194**

cannot now be heard to complain because the court has ruled against the defendant. Missouri Pacific Railroad Co. v. National Milling Co., 409 F.2d 882 (C.A. 3, 1969).

■ The Union makes much of the court's opinion where it states, "Due to work fluctuation brought about by excessive inventories within the plant, the plaintiff employers reduced the work force in Unit B and Unit C of the plant.", that it is intruding into the merits of the controversy. However, this is not a finding of fact by the court but a setting forth of the fact of a layoff which was unreservedly left to management under the terms of the Agreement. Management made this factual determination as the causative reason for the reduction in the work force, which reduction is admitted in paragraph 3 of the defendants' answer. Accordingly, we hold that, under the terms of the Agreement by the parties, the de-

limited period of time under these circumstances?

"MR. GILCHRIST: (Counsel for plaintiffs.) That is correct sir. And, our position further is that the particular issue before the Court is specifically excluded from arbitration under the terms of the contract.

"THE COURT: And, you say it isn't?

"MR. GUENTHER: (Counsel for defendants.) Yes, Your Honor, that is correct.

"THE COURT: Well then, we don't have anything to look at.

"MR. GILCHRIST: Again, it is just the contract.

"THE COURT: We just have an interpretation of the contract?

"MR. GILCHRIST: That is correct, Your Honor."

\*     \*     \*     \*     \*

"THE COURT: And so, you may have a different point of view as the facts look, but from what you say now the factual occurrence is there.

"Whether the Plaintiff did the right thing by choosing to lay off employees as it did is one question. In other words, the Defendants say it should have been on a seniority basis, and the Plaintiffs say, 'Not at all, this was a special exclusion.'

"I think you just said that?

"MR. GILCHRIST: That is correct, sir.

"THE COURT: Thus, the contract will have to do the speaking.

"MR. GUENTHER: Yes, Your Honor."

After requesting counsel to present briefs within ten and twenty days, respectively, the court stated:

"THE COURT: And we will try to make a determination on the question of law as you have presented it.

"All right. Then, under the circumstances, the case will be ready for judgment and determination without further hearing after receipt of the briefs of counsel. And, this conference will be transcribed at the joint expense of the parties."

The question then arose as to whether or not the record had the seniority status of those who were laid off as against those who should have been laid off as contended by the defendants.

"THE COURT: Now, for the purpose of this record, is there any way of being able to have counsel stipulate and file as a matter of stipulation that certain employees as laid off had certain seniority rights and certain other employees had other seniority rights, so that that might be considered in the final judgment and so that it may also be considered in arriving at whether or not it ought to be considered? In other words, as to its relevancy?

"In other words, if we want to have a determination here on the law, we must dispose of all issues of fact. Now, here is one issue of fact that counsel says is not reflected in the record."

As a result of the court's suggestion, the following colloquy took place:

"THE COURT: I think you can classify them according to seniority and say how many there were in each class.

"MR. GILCHRIST: Yes, that is correct.

"THE COURT: And then, does that present your factual support for your argument?

"MR. GUENTHER: Yes, Your Honor.

"THE COURT: All right. Then, we don't have any factual issues, is that it, other than this stipulation, which will give us any evidence or testimony, whether relevant or not, as to the ultimate question of whether this problem as it relates to the laying off was or was not arbitrable?

"MR. GUENTHER: Yes, Your Honor."

termination of the reason for the layoff is a fact reserved to management under Article III, Section 1, entitled Management Rights, and, further, under Article XIII, Section 9(c), it is stated plainly and with clarity, "Issues arising out of the exercise of the rights reserved to management under the title Rights of Management above shall not be subject to arbitration. The question of arbitrability of any issue shall, if the Company or Union insists, be determined by a court and not by the arbitrator. Only a single grievance may be heard by the Arbitrator at one time." Therefore, since there was agreement by both parties before the court that there was no factual issue to be resolved and, further, since the reduction in work force did not exceed 15 work days, the Company was within its right in refusing to submit the matter to arbitration as the reason for the layoff was a fact, as indicated, unreservedly left to management.

In United Steelworkers of America v. Warrior & Gulf Navigation Corp., 363 U.S. 574, 584, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 the Court states: "Accordingly, 'strictly a function of management' must be interpreted as referring only to that over which the contract gives management complete control and unfettered discretion. Respondent claims that the contracting out of work falls within this category. Contracting out work is the basis of many grievances; and that type of claim is grist in the mills of the arbitrators.[8] A specific collective bargaining agreement may exclude contracting out from the grievance procedure. Or a written collateral agreement may make clear that contracting out was not a matter of arbitration. In such a case a grievance based solely on contracting out would not be arbitrable. Here, however, there is no such provision." (Footnote omitted.) We can only add that here there was a specific agreement between the parties, under the contract, to exclude seniority with respect to the temporary layoff for fifteen days.

Accordingly, the judgment of the court below in denying summary judgment and also in granting the plaintiffs' petition for a declaratory judgment will be affirmed.

KALODNER, Circuit Judge (dissenting).

I would reverse the judgment of the District Court entered August 29, 1968 in favor of the plaintiffs and against the defendants, entered pursuant to its Order of August 21, 1968 denying the defendants' motion for summary judgment and granting the plaintiffs' motion for declaratory judgment.

In its Opinion [1] accompanying its Order of August 21, 1968, the District Court made the fact-findings that "Due to *work fluctuation* brought about by excessive inventories within the plant, the plaintiff employers reduced the work force * * *", and that "The parties have agreed that there was a *work fluctuation.* * * *" (emphasis supplied).

The record fails to disclose any evidentiary premise for the District Court's fact-findings that there was a "work fluctuation" and "The parties have agreed that there was a work fluctuation." The record, to the contrary, affirmatively establishes that the plaintiff employers pleaded in Paragraph IV of their Complaint that "due to a *work fluctuation* brought about by an excessive inventory * * * and a lessening or orders, * * *" they "found it necessary to reduce * * *" their work force, and that the defendants in Paragraph 3 of their Answer to the Complaint denied "the allegation of Paragraph IV as stated" and admitted only that there was a *reduction* in the work force." Moreover, the "Stipulation of Facts" entered into by the parties provided only that "plaintiff *reduced* its work force." (emphasis supplied)

The sum total of the foregoing is that there was a disputed issue presented as to whether there was a "work fluctua-

tion", and that being so the District Court was required to abstain from further consideration of the case and to direct submission of the Union's grievance to arbitration. "Steelworkers Triology". United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L. Ed.2d 1424 (1960).