FEDERATION OF TELEPHONE WORKERS OF PENNSYLVANIA, by I. C. Glendenning, its Trustee ad Litem, Plaintiff,

v.

The BELL TELEPHONE COMPANY OF PENNSYLVANIA, Defendant.

The BELL TELEPHONE COMPANY OF PENNSYLVANIA, Plaintiff,

v.

FEDERATION OF TELEPHONE WORKERS OF PENNSYLVANIA, Defendant.

Civ. A. Nos. 74–2565, 74–2584.

United States District Court, E. D. Pennsylvania.

Nov. 26, 1975.

Richard H. Markowitz, Philadelphia, Pa., for plaintiff.

Hubert Thurschwell, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

HIGGINBOTHAM, District Judge.

These consolidated cases come before the Court on cross-motions for summary judgment. In Civil Action No. 74–2565, the Federation of Telephone Workers of Pennsylvania ("the Union") is the moving party, seeking enforcement of an arbitrator's award against the Bell Telephone Company of Pennsylvania ("the Company"). The Company is the moving party in Civil Action No. 74–2584, and seeks to have the same arbitration award set aside. The Company has also cross-moved for summary judgment in Civil Action No. 74–2565. The same facts are material in both cases, they are not in dispute, and both parties concede that the cases are ripe for summary judgment. After careful consideration of those material facts and of the briefs and memoranda submitted by the parties, I have concluded that neither is en-

titled to the full relief they request. Thus, for reasons that will hereinafter appear, their respective motions for summary judgment will be granted in part and denied in part.

## FACTUAL BACKGROUND [1]

The Union and the Company were parties to a collective bargaining agreement dated May 17, 1943, as last amended July 28, 1971 (hereinafter "Agreement").[2] The Agreement provided a grievance and arbitration procedure for the resolution of disputes between the parties. That procedure culminated in the submission of unresolved disputes to an impartial arbitrator selected under the auspices of the American Arbitration Association. Arbitration of disputes, however, was specifically limited to matters made subject to arbitration by the provisions of the Agreement. Agreement, § 13.01. The Agreement expressly excluded disputes about the terms of the promotions article, Article 22, from arbitration. Agreement, § 22.04.

On November 15, 1972, the Company, in response to objections by the Equal Employment Opportunity Commission ("EEOC") and other federal agencies to its promotion practices, implemented its Upward Mobility Transfer Plan ("UMTP"). The plan formalized promotion procedures and special selection procedures for the placement of certain employees in job classifications where they had previously been underutilized. By a letter dated November 29, 1972, the Union demanded that the Company's implementation of the UMTP be submitted to arbitration.

On January 18, 1973, this Court approved a Consent Decree in a suit, Civil Action No. 73–149, brought by the EEOC and other agencies of the federal government, against the American Telephone and Telegraph Company ("AT&T") and the operating companies of the Bell System, including Bell of Pennsylvania (the Company in the instant actions). The suit had charged AT&T and its operating companies with employment discrimination against women and minorities. The Consent Decree required the companies of the Bell system to develop affirmative action programs for the employment of women and minorities and to establish a variety other procedures related to the employment of women and minorities. These requirements were designed to insure the compliance of Bell system companies with applicable federal law, including the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., the Fair Labor Standards Act of 1938, as amended, the Equal Pay Act, 29 U.S.C. § 201 et seq., and Executive Order No. 11246, as amended, Revised Order No. 4, 29 C.F.R. §§ 60–2.1 et seq.[3]

Part A, § I of the Decree states that AT&T's Model Upgrading and Transfer Plan, incorporated into the Decree as an Appendix, is consistent with Revised Order No. 4 and is a "bona fide seniority or merit system" under § 703(h) of Title VII of the Civil Rights Act of 1964. It further states that the adoption and implementation of the plan by the Bell System would constitute compliance with the requirements of Revised Order No. 4 and Title VII. The Company's UMTP in

---

1. The Union contends in its Motion for Summary Judgment, Doc. # 7 in No. 74–2565, at 1, that the only material facts in these cases are the collective bargaining agreement, the arbitration hearing, and the arbitrator's award. While those facts are undoubtedly material, these cases would scarcely be intelligible without a more extensive factual discussion than the mere recital of those three facts would provide.

2. A copy of the Agreement is attached as Exhibit A to the Union's complaint in Civil Action No. 74–2565.

3. The agreement of the parties is set forth in 1 CCH Emp. Prac. ¶ 1860, at 1533–3 to 1533–14. For a discussion of the background of the Decree, see my opinion in EEOC v. AT&T Co., 365 F.Supp. 1105 (E.D.Pa.1973). For the subsequent history of Civil Action No. 73–149, see EEOC v. AT&T Co., 506 F.2d 735 (3d Cir. 1974), aff'g in part, remanding in part 365 F.Supp. 1105 (E.D.Pa.1973).

the instant case is patterned after that model plan and is in compliance with the Decree.

In Part B, § II, ¶ D, the Decree states that it modifies existing Bell system collective bargaining agreements only to the extent required by federal law, and provides for negotiation, by Bell system companies and the collective bargaining representatives of their employees, of alternatives to its own provisions, so long as the alternatives also comply with federal law.

On July 12, 1973, as part of its original November 29, 1972 case, the Union submitted to arbitration the grievances of eleven employees. The latter claimed that the imposition of the UMTP had either delayed their promotion or denied it altogether.

In a letter dated August 3, 1973, the Company stated its position on the demand for arbitration. It disclaimed any violations of the Agreement and denied the authority of an arbitration board to review its UMTP. While it was willing to present that position to an arbitration board, it said that such a presentation was not a waiver of its objections to the board's authority and jurisdiction over the UMTP. It expressly reserved its right to take legal action in other appropriate forums.

Arbitrator Lewis Gill was selected as impartial chairman of the arbitration board. Arbitration hearings were conducted before him on October 3, 1973, December 10, 1973 and January 10, 1974. On July 22, 1974, Arbitrator Gill rendered an award requiring the Company to make certain changes in its UMTP,[4] and on September 16, 1974, he issued an

opinion stating his reasons for the July 22 award.[5]

In its complaint in No. 74–2565, the Union alleges that the Company has failed to comply with the arbitrator's award in six different respects.[6] In its complaint in No. 74–2584, the Company alleges that Items 1 through 5 in the award require violations of the Consent Decree, that Items 2 through 5 are based on a nonarbitrable provision of the Agreement, and that Item 1 is based on an impermissible addition to the Agreement by the arbitrator. In each of these five items, the Company argues, Arbitrator Gill exceeded his authority and jurisdiction.[7]

## LEGAL DISCUSSION

### A. The Law of Arbitrability

 It is well settled that the arbitration of labor disputes is a federally favored policy. 29 U.S.C. § 173(d); *Gateway Coal Company v. United Mine Workers*, 414 U.S. 368, 377, 94 S.Ct. 629, 636, 38 L.Ed.2d 583 (1974); *Controlled Sanitation Corp. v. District 128, International Association of Machinists*, 524 F.2d 1324, at 1328 (3d Cir. 1975). The threshold question of arbitrability, however, is a matter for judicial determination. *International Union of Operating Engineers, Local 150 v. Flair Builders, Inc.*, 406 U.S. 487, 491, 92 S.Ct. 1710, 1713, 32 L.Ed.2d 248 (1972); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964); *Atkinson v. Sinclair Refining Company*, 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); see *United Steelworkers of America v. Warrior and Gulf Navigation Company*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d. 1409 (1960).[8] Since arbi-

---

4. A copy of the award is annexed to the Union's complaint in No. 74–2565 as Exhibit B.

5. A copy of the opinion appears as Exhibit C to the Union's complaint in No. 74–2565.

6. An additional failure in compliance is alleged in the Union's motion for summary judgment in No. 74–2565, Doc. # 7 at 3.

7. In its cross-motion for summary judgment in No. 74–2565, the Company further alleges that the arbitrator exceeded his authority in Item 6

of the award and that it is already in compliance with Items 1, 2, 3, 6 and 9 of the award. The same cross-motion contains no allegation that Item 1 of the award violates the consent Decree, and the Company may well have abandoned that claim. In light of my decision on Item 1 under the Agreement, I need not, and do not, reach that question.

8. The Steelworkers Trilogy, of which the Warrior and Gulf case is part, is the most authori-

tration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Warrior and Gulf, supra,* 363 U.S. at 582, 80 S.Ct. at 1353; see *John Wiley & Sons, Inc., supra,* 376 U.S. at 547, 84 S.Ct. 909. Thus, an employer and a union can agree to exclude certain issues or disputes from the arbitration procedures of their collective bargaining agreement. *Atkinson, supra,* 370 U.S. at 241–42, 82 S.Ct. 1318; *Warrior and Gulf, supra* at 584–85. If there is doubt about whether the parties have agreed to submit a dispute to arbitration, those doubts should be resolved in favor of arbitration. *Warrior and Gulf, supra,* 363 U.S. at 583, 80 S.Ct. 1347. If, however, "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," id. at 582–83, 80 S.Ct. at 1353, and if the collective bargaining agreement contains an "express provision excluding a particular grievance from arbitration," id. at 485, 80 S.Ct. at 1354, then the particular dispute or grievance is non-arbitrable. Should enforcement be sought for an arbitrator's award based upon a non-arbitrable provision of a collective bargaining agreement, enforcement must be denied. See *Enterprise Wheel and Car Corp., supra,* 363 U.S. at 597, 80 S.Ct. 1358.

## B. The *New York Telephone Company* Case

■ The Court of Appeals for the Second Circuit applied many of these principles in *Communications Workers of*

*America v. New York Telephone Company,* 327 F.2d 94 (2d Cir. 1964), a case remarkably similar to the instant action. The district court had granted the defendant's motion for summary judgment and dismissed plaintiff union's action to compel the arbitration of temporary promotions. The Court of Appeals affirmed.[9]

The collective bargaining agreement in the CWA case excluded disputes over promotions from arbitration, contained a general arbitration clause "regarding the true intent and meaning" of the agreement, and limited arbitration to matters specifically made subject to arbitration. It thus parallels the Agreement in the instant case. See §§ 22.04, 10.06 and 13.01 respectively. Plaintiff union in the *CWA* case also made the same argument that the Union makes in the instant case,[10] namely, that the exclusion from arbitration applied to individual promotion disputes alone and not to broader disputes over promotion policy generally. The Second Circuit rejected that argument, reasoning that the exclusionary clause of the contract, which prohibited arbitration of *any* dispute over the terms of the promotions article, would be meaningless if it did not also limit the scope of the general arbitration clause regarding the "true intent and meaning" of the agreement. 327 F.2d at 96–97.

The same rationale applies with equal force in the instant case. Section 22 of the Agreement does not make promotion disputes specifically subject to arbitration as required by § 13.01. Indeed, it specifically excludes them from arbitration.[11] To embrace the argument ad-

---

tative Supreme Court statement of the national policy favoring arbitration of labor disputes. See also *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) and *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

9. The Union's Reply Memorandum, Doc. # 13, at 14–15 has attempted, unpersuasively, to distinguish the *CWA* case. While it was an action to compel arbitration, not an enforcement proceeding, the issues presented, the arguments made by the parties and the collective

bargaining agreement there all significantly resemble their counterparts in this case.

10. Arbitrator Gill in fact accepted this argument.

11. In the *CWA* case, the Second Circuit construed a contract provision substantially similar to the clause barring arbitration in the instant case and said: "[i]t is difficult to imagine a clearer or more direct exclusionary clause . . . ." 327 F.2d at 96. That language accurately describes § 22.04 of the instant Agreement. Its clarity and directness are incontestable.

vanced by the Union, and erroneously accepted by the arbitrator, would be to locate the arbitrator's authority in the "true intent and meaning" language of § 10.06, and thus render § 22.04 meaningless. There can be no doubt that an arbitrator's discretion is broad and entitled to judicial deference. But there comes a point where the cloak of his office will not suffice to conceal utter absurdities in his award, especially when those absurdities are bereft of logic, contractual intent and legal authority. Absurdities in contract construction are not favored by the courts. Enforcement of the arbitrator's award, in so far as it is based on Article 22 of the Agreement, must be denied.

## C. Items 2 Through 5 of the Award

■ In his opinion, Arbitrator Gill discusses seven items where he directed the Company to take remedial action. With regard to items 2 through 5, he states (Opinion at 5–6):

> Probably the most important are numbers 2, 3, 4 and 5, since those items deal with new policies under which some employees are totally and automatically eliminated from consideration for promotions or other vacancies, whereas before under the same conditions they were not. The provisions in the Award on these subjects (application rules, attendance, time in title, and job freeze) speak for themselves, in effect stating that the new policies in these areas are not required by the Decree and shall be set aside in favor of the previous policy of flexibility as to these factors. The rulings reflect my conclusion that it is violative of the contract provision on promotions (Article 22) for the Company to unilaterally disqualify employees from consideration under the standards set forth in that Article, and that since those changes are not required for compliance with the Decree, they should be discontinued.

Probably two comments are in order as to this conclusion. One is that the Company has a very respectable argument that even this general conclusion amounts to ruling on a "dispute between the Union and the Company involving the terms of this Article" (Article 22), which is not supposed to be "subject to arbitration." However, I am persuaded by the Union's contention that the "true meaning and intent" of that provision in Article 22 is simply to rule out arbitration of individual grievances claiming improper denial of promotions under that Article, not to render unilateral changes in the general policy immune for review

. . . .

Items 2, 3, 4 and 5 of the arbitrator's award are therefore clearly based on what the arbitrator found to be violations of Section 22 of the collective bargaining agreement. Claims under Section 22, however, are specifically excluded from the arbitrator's jurisdiction. In a word, such claims are nonarbitrable. Thus, because the arbitrator, in Items 2, 3, 4 and 5, made decisions that he lacked the jurisdiction and authority to make, I am compelled to set aside those specific items of the award.

I am well aware that "[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *Enterprise Wheel and Car Corp., supra,* 363 U.S. at 598, 80 S.Ct. at 1361. There is, however, no ambiguity in arbitrator Gill's opinion as to Items 2, 3, 4, and 5. He stated flatly that the procedures challenged by the Union in those items were "violative of the contract provision on promotions (Article 22)." Exhibit C to the Union's complaint in No. 74–2565, at 6.

The Union relies primarily on *Ludwig Honold Manufacturing Company v. Fletcher,* 405 F.2d 1123 (3d Cir. 1969). The citation proved less than helpful in resolving the dispute over Items 2 through 5 of the award. Judge Aldisert, writing for the panel in *Honold,* specifically stated that the case did not involve

the issue of arbitrability. 405 F.2d at 1125.

The Company argues that Part C, Items 2 through 5 of the arbitration award should be vacated because they conflict (1) with the Consent Decree approved by this Court in No. 73–149, and (2) with the Company's equal employment obligations under federal law. In view of my decision that Items 2 through 5 of the Award must be set aside because Arbitrator Gill exceeded his authority under the Agreement, I need not, and do not, reach either of these federal law grounds for vacating those items in the award.

## D. Item 1 of the Award

In Item 1 of the award, Arbitrator Gill required the Company and the Union to "negotiate to set up appropriate procedures" that would give the Union's representatives "direct access to the Placement Bureau to discuss grievances regarding actions taken by that Bureau." Explaining this item, Arbitrator Gill said (Opinion at 7):

> As to number 1, dealing with the newly created Placement Bureau, that involves the Company's obligation (expressly affirmed in a Letter Agreement of May 14, 1968) to "give the Union the reasons for the selection and the reasons why the unsuccessful applicant was not selected as the basis for discussing the grievance." I think it is a fair implementation of that understanding to arrange for the Union to have direct access to the Placement Bureau in grievances regarding actions taken by that Bureau.

The letter agreement referred to in the Opinion, however, is a summary of a "discussion regarding the meaning of Article 22, Promotions" between the Company and the Union. Agreement, "Letter Agreements," at 8. The letter agreement in question is thus an agreed interpretation of the terms of Article 22, and disputes over the meaning of that

article have been specifically from arbitration. Agreement, § 22.04. Item 1 of the award therefore labors under the same deficiency that I have previously found to afflict Items 2 through 5; it is based on a non-arbitrable provision of the Agreement. When, as here, an arbitrator's award does not draw "its essence from the collective bargaining agreement. . . . courts have no choice but to refuse enforcement of the award." *Enterprise Wheel and Car Corp., supra,* 363 U.S. at 597, 80 S.Ct. at 1361.[12]

## E. Item 6 of the Award

> "6. *Temporary demotions.* The change from the previous practice of permitting employees to return automatically to their prior jobs on completion of the temporary demotion, is not required by the decree; the previous practice shall be restored."

In his opinion, Arbitrator Gill says only that this item is "relatively minor and self-explanatory." Opinion at 7. The Company contends that "a return to a former higher job from a demotion is a *promotion*" and is therefore non-arbitrable under § 22.04 of the Agreement. Company Memorandum, Doc. # 10, at 20 (emphasis in original). The Union does not respond specifically to this argument, urging instead that the Court generally enforce all of the disputed items in the award under the authority of the *Honold* case. *Honold* is, of course, again distinguishable, since the court there expressly stated that the issue of arbitrability was not before it. There is then *no* judicial authority for the Union's position that Item 6 involves a dispute that is arbitrable under the Agreement. Moreover, in my view it would be doing violence to the English language to interpret the return of an employee to a former higher-rated job as anything other than a promotion. The foregoing discussion of Items 1 through

---

12. I need not, and do not, reach the Company's further argument that Item 1 constitutes an unauthorized addition to the Agreement by the arbitrator.

5 demonstrates the non-arbitrable character of disputes over promotions. Accordingly, enforcement of Item 6 of the award must also be denied.[13]

### F. Item 9 of the Award

 The final disputed item in the award is Item 9. Arbitrator Gill described it too as "relatively minor and self-explanatory." Opinion at 7. It reads as follows:

> "9. Payment of expenses. There has assertedly been a change in the prior practice of payment of expenses as called for in A6.051 of the contract. No such change is required by the decree, and we direct that the previous practice be followed."[14]

The Company says there has been no such change, and submits that it is in compliance with the award. The Union rightly points out that, "if such is the case, then the Company should not find that enforcement of the arbitration award with respect to the payment of expenses will prove any hardship to it." Union Reply Memorandum, Doc. # 13, at 23. Accordingly, enforcement of Item 9 of the award will be ordered.

### CONCLUSION

For reasons set forth in the foregoing sections of this opinion, it is apparent that neither party is entitled to the full relief it seeks. By basing certain items in his award on non-arbitrable provisions of the Agreement, Arbitrator Gill exceeded his authority under that Agreement. Those items in his award must therefore be set aside, and their enforcement denied. As to the only other disputed item in the award, however, the Union is entitled to an order of enforcement. Accordingly, in Civil Action No. 74–2565,

the Union's motion for summary judgment is granted as to Item 9, and is denied as to Items 1 through 6. The Company's cross motion for summary judgment in that action and its own motion from summary judgment in Civil Action No. 75–2584 are granted as to Items 1 through 6, and are denied as to Item 9. An appropriate order will be entered.

This opinion shall constitute the Court's findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure.

---

**13.** This conclusion draws further support from the opinion of Arbitrator James C. Hill, in AAA Case No. 14 30 0565 73, decided June 21, 1974. There, Arbitrator Hill, in a dispute between the same two parties, held disputes over demotions to be non-arbitrable. His opinion appears as Exhibit A to the affidavit of R. E. Young in support of the Company's Cross Motion for Summary Judgment, Doc. # 9, filed April 21, 1975.

**14.** Section A6.051 is part of § A6.05 of the Agreement, which is titled "Employees Permanently Transferred from one Payroll Location to Another."