**HALSTEAD INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STEELWORKERS OF AMERICA and Local No. 7032 of United Steelworkers of America, Defendants.**

**Civ. A. No. 76–1117.**

United States District Court, W. D. Pennsylvania.

May 18, 1977.

Thomas W. King, III, Butler, Pa., for plaintiff.

Carl B. Frankel, Pittsburgh, Pa., Bernard Kleiman, Chicago, Ill., for defendants.

## OPINION

MARSH, District Judge.

Halstead Industries, Inc. (Halstead) brings this action pursuant to 29 U.S.C. § 185(a) seeking a declaratory judgment that certain grievances are not arbitrable under the collective bargaining agreements between Halstead and defendant United Steelworkers of America (USW). The defendants have filed a counterclaim seeking an order compelling Halstead to submit the grievances to arbitration. Defendants have moved for summary judgment.

The grievances, which were filed in April, June, and August of 1975, concern the failure of Halstead to assign leadmen to certain bays on various shifts at Halstead's plant at Zelienople, Pennsylvania. Two of the grievances were filed by defendant Local No. 7032 of the USW (Local). The other two were filed by individual leadmen. (See attachments A–D, Defendants' Answer and Counterclaim).

Leadmen are scheduled by Halstead to work in various bays at the Zelienople plant. Their chief responsibility is to expedite operations. They fill in where they are needed, assure that tools and materials are provided, and watch for potential bottlenecks in production.

■ Whether Halstead is bound to arbitrate and what issues it must arbitrate are questions for the court, not the arbitrator. *International Union of Operating Engineers, Local 150, AFL-CIO v. Flair Builders, Inc.,* 406 U.S. 486, 491, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972); *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). To answer these questions the court must examine the arbitration clause and any clauses excluding issues from arbitration.

Article XVI, Section 8, of the agreements is entitled "Grievance Procedure" and provides in pertinent part:

"(b) Grievances within the meaning of the Grievance Procedure and of this arbitration clause shall consist only of disputes about the interpretation or application of particular clauses of this Agreement and about alleged violations of the Agreement. The Arbitrator shall have no power to add to, or subtract from, or modify any of the terms of this Agreement.

(c) Issues arising out of the exercise of the rights reserved to management under the title 'Rights of Management' above shall not be subject to arbitration."

Article III, Section 1, of the agreements is entitled "Management Rights" and provides in pertinent part:

"Except to the extent expressly abridged by a specific provision of this Agreement, the Company reserves and retains, solely and exclusively, all of its Common Law rights to manage the business. The sole and exclusive rights of management which are not abridged by this Agreement shall include, but are not limited to, its right to determine the existence of facts which are the basis of a management decision; . . . to select and to determine the number and types of employees required; to assign work to such employees in accordance with the requirements determined by management; to establish and change work schedules and assignments; to transfer, promote, or demote employees, or to lay off, terminate or otherwise relieve employees from duty for lack of work or other legitimate reasons, to determine the fact of lack of work, . . . to suspend, discharge or otherwise to take measures as management may determine to be necessary for the orderly, efficient and profitable operation of its business—all to the best regard of its employees."

■ The court's jurisdiction to determine the arbitrability of this dispute is not undermined by the fact that the following clause from an earlier contract was deleted during the 1969 contract negotiations:

"The question of arbitrability of any issue shall, if the Company or Union insists, be determined by the court and not by the arbitrator."

According to the affidavit of Hubert Reed, chairman of the local union's grievance committee, Halstead had relied upon this clause in 1968 to obtain a federal district court ruling that a grievance over seniority rights was not arbitrable.[1] Reed states the clause was dropped in order to end "the possibility of going to court to obtain a ruling on arbitrability."

---

1. See *Halstead & Mitchell Co. v. United Steelworkers of America,* 69 LRRM 2124, 58 LC ¶ 12,941 (W.D.Pa.1968), *aff'd,* 421 F.2d 1191 (3rd Cir. 1969), which concerned Halstead's disregard of seniority rights during a temporary lay-off due to work fluctuation.

The Reed affidavit is challenged by the affidavit of Delorma Douthett, Vice-President of Halstead, who served on the negotiating committee on contract talks with the defendants in 1969.

Whether extrinsic evidence from the negotiating parties may be admitted to aid in interpreting the collective bargaining agreement is not entirely certain. *Local 13, International Federation of Professional and Technical Engineers, AFL-CIO v. General Electric Company,* 531 F.2d 1178, 1183 n. 13 (3rd Cir. 1976). However, even if we admit the affidavit of Reed and disregard that of Douthett, the Reed affidavit itself indicates that the defendants failed to effectively insure that future disputes over arbitrability would be decided by an arbitrator and not by a court. In 1969, the law required that a party intending to place the question of arbitrability in the hands of the arbitrator bear "the burden of a clear demonstration of that purpose." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 583 n. 7, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960).

Eliminating a clause which stated that the question of arbitrability was for the court, without more, was not a clear demonstration of an intent to vest power in the arbitrator to decide the question of arbitrability. Absent a clause which plainly states that the question of arbitrability is for the arbitrator, this court cannot relinquish jurisdiction to decide the arbitrability of the matter *sub judice.*

We now examine the primary question of whether or not the failure to assign leadmen creates an issue which must be arbitrated under the provisions of the collective bargaining agreements.

■ Well-established federal labor policy favors arbitration as the means of resolving disputes over the meaning and effect of collective bargaining agreements. *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO,* 430 U.S. 243, 250–253, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). In order to effectuate this policy, the Supreme Court has established a strong presumption favoring arbitrability:

"[T]o be consistent with the congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, . . . [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*Warrior & Gulf, supra,* 363 U.S. at 582–583, 80 S.Ct. at 1353.

■ Arbitration, however, is a matter of contract and a party cannot be compelled to arbitrate any matter in the absence of a contractual obligation to do so. An express provision excluding a particular clause from arbitration will suffice to exclude that claim from arbitration. *Nolde Brothers, supra,* 430 U.S. at 252, 97 S.Ct. 1067; *Controlled Sanitation Corporation v. District 128 of the International Association of Machinists and Aerospace Workers, AFL-CIO,* 524 F.2d 1324, 1328 (3rd Cir. 1975).

■ In light of these principles, the issue here is whether Halstead's failure to assign leadmen is the exercise of a right reserved to Halstead under the management rights clause of Article III, Section 1. If Halstead has the right to assign leadmen under the management rights clause, then the issue concerning the failure to assign leadmen is not arbitrable because the exclusionary clause contained in Article XVI, Section 8(c), specifically excludes from arbitration "[i]ssues arising out of the exercise of the rights reserved to management under the title 'Rights of Management'", i. e. issues arising out of the exercise of rights reserved in Article III, Section 1.

We conclude that Halstead's decision not to assign leadmen is the exercise of a right reserved under the management rights clause of Article III, Section 1.

Leadmen are a type of employee and Halstead has reserved the right to select the "types" of employees required. Individual leadmen have filed grievances over the

failure of Halstead to assign them work in certain bays and Halstead has reserved the right "to assign work to such employees in accordance with the requirements determined by management." Leadmen are scheduled by Halstead to work in various bays at its Zelienople plant, and Halstead has reserved the right to "change work schedules and assignments."

The defendants rely heavily upon *Warrior & Gulf, supra,* 363 U.S. at 585, 80 S.Ct. 1347, where the Supreme Court found the exclusionary clause to be vague. Here, however, the exclusionary clause incorporates a specific list of management rights, including rights particularly applicable to the matter in dispute. As the Third Circuit stated in reference to a similar clause in an earlier agreement between these same parties:

> "Here, in our judgment, the language used in the Agreement is clear, precise and unambiguous, . . . especially the *granting to management of the right* to determine the facts necessitating any reduction in force, reciting them Indian fashion and with specificity."

*Halstead & Mitchell, supra,* 421 F.2d at 1193. Defendants' argument that the exclusionary clause is vague must be rejected.

■ Defendants contend that the rights reserved to Halstead in the management rights clause in Article III, Section 1,[2] are subordinate to other provisions in the remainder of the agreements, specifically Article V, Section 4, which governs changes in job descriptions and classifications; Article XIII, Sections 2 and 3, which deal with seniority rights in cases where the work force is reduced; and Article XXIII, Section 1, which provides that the company "shall continue to make reasonable provisions for the safety and health of its em-ployees at the plants during the hours of their employment."

Whether the three provisions cited by defendants expressly abridge Halstead's reserved right to assign leadmen at its discretion need not be decided. The grievances filed in this case do not rely upon any rights provided for in those three provisions. All four grievances filed here complain only about the failure to assign the job of leadman to certain bays on various shifts.

None of the grievances raises an issue about changes in job descriptions or classifications under Article V, Section 4. The grievances filed do not complain that the failure to assign leadmen was an improper application of the established job evaluation and classification method.[3] The four grievances do not complain that the failure to assign leadmen resulted in a denial of seniority rights or in decreased plant safety. Thus, no issues are raised under Article XIII, Sections 2 and 3 or Article XXIII, Section 1.

■ The defendants argue that interpreting what the grievances say is a "procedural" question which should be decided by the arbitrator under *John Wiley & Sons v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). *Wiley,* however, makes clear that the arbitrator's jurisdiction over "procedural" questions does not arise until *after* a court determination has been made that the subject matter of a dispute is arbitrable. 376 U.S. at 557, 84 S.Ct. 909. A court cannot determine if the subject matter of a dispute is arbitrable unless it examines the content of the grievances filed.

Our examination of the arbitration and management rights clauses in these agreements persuades us that the clauses are not

---

**2.** Article III, Section I provides in pertinent part:

> "*Except to the extent expressly abridged by a specific provision of this Agreement,* the Company reserves and retains, solely and exclusively, all of its Common Law rights to manage the business. The sole and exclusive rights of management *which are not abridged by this Agreement* shall include, but are not limited to . . . .." (Emphasis supplied).

**3.** Article V, Section 4(b) provides:

> "The filing of a grievance involving the evaluation and classification of a new job or job change *shall be limited to* whether the new evaluation is based on the proper application of the Company's established job evaluation and classification method as provided for in the CWS Manual." (Emphasis supplied).

susceptible to "an" interpretation which would cover the matter in dispute. *Affiliated Food Distributors, Inc. v. Local Union No. 229,* 483 F.2d 418, 422 (3rd Cir. 1973) (Adams, J., dissenting). See *Local 13, International Federation of Professional and Technical Engineers, AFL-CIO v. General Electric,* 531 F.2d 1178 (3rd Cir. 1976); *Federation of Telephone Workers of Pennsylvania v. Bell Telephone of Pennsylvania,* 406 F.Supp. 1201 (E.D.Pa.1975), *aff'd mem.,* 546 F.2d 416 (3rd Cir. 1976), *pet. for cert. denied,* —— U.S. ——, 97 S.Ct. 1651, 52 L.Ed.2d 360 (1977).

An appropriate order will be entered.